CHARLES THRASHER, Appellant, *v.* THE PIKE COUNTY RAILROAD COMPANY, Appellee.

25 393
26a 475
25 393
134 495
25 393
87a 380
25 393
193 4155
25 393
198 4565

### APPEAL FROM PIKE.

An undertaking to subscribe a certain amount of stock, when books shall be opened, does not make the subscriber a stockholder, and as such liable to calls.

Such a promise is like an agreement to purchase any specific article of property; if there has not been a delivery of or an offer to deliver the stock, the measure of damages is not the value of the stock; but only such damages should be awarded as would result from the loss of a bargain.

One corporation cannot recover upon subscriptions made to another, however identical the object sought by the organizations, or the parties composing them.

Stockholders in a corporate body, are not competent witnesses on behalf of the corporation; they should assign their stock, in order to become witnesses.

THIS was an action of assumpsit in the Circuit Court of Pike county, by the Pike County Railroad Company, appellee, against Charles Thrasher, the appellant, upon the following agreement:

We, the undersigned, agree to subscribe to the stock of the Pike County Railroad, the sums set against our names, when the books may be opened for subscription.

Griggsville, March 19th, 1856.

Charles Thrasher.................................... ................$3,000

The first count of the declaration was as follows:

For that whereas, heretofore, to wit, on the nineteenth day of March, A. D. 1856, at Griggsville, to wit, at the county of Pike aforesaid, the said plaintiffs, now a body politic and corporate with power to construct and operate a railroad within said county, and said plaintiffs were then and there authorized by law as such corporation, for the purposes of constructing, equipping and operating said road, to secure subscriptions to the capital stock of said company to the amount of one million

of dollars, in shares of one hundred dollars each, and plaintiffs, on the day and year last aforesaid, at the county aforesaid, not yet having opened their regular subscription books for the purpose of securing subscriptions to the capital stock of said road, but intending to do so, and desiring to know what amount of capital stock would be subscribed thereto, then and there undertook and promised the said defendant, on their part, that said plaintiffs would, in a reasonable time thereafter, at the county aforesaid, open books for the purpose of securing subscriptions to the capital stock of said company, and that they, the said plaintiffs, would permit and allow the said defendant, when said books should be opened, to subscribe thereto to the capital stock of said company, thirty shares of $100 each, and that upon the payment thereof by defendant to plaintiffs the said defendant should become and be the owner of thirty shares of the capital stock of said company. In consideration of which, said defendant then and there undertook and faithfully promised the said plaintiffs, that he, the defendant, would subscribe to the stock of the Pike County Railroad, (then and there meaning plaintiffs,) the sum of $3,000 when the books may be opened for subscription, which said undertaking and promise, was then and there in writing, signed by defendant, and then and there by him delivered to said plaintiffs, and plaintiffs aver that afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, subscription books to the capital stock of said company were opened, of which the said defendant then and there had notice.

Yet the said defendant, not regarding his said promise, but then and there contriving and intending, etc., wholly neglected and refused to subscribe said sum of $3,000 or any part thereof, and still does so neglect and refuse. And plaintiffs further aver that the subscription to said road when said books were so opened, was due and payable before the commencement of this suit. Yet the said defendant, although he was duly notified thereof on the day and year last aforesaid, at the county aforesaid, by plaintiffs, has not paid said sum of $3,000, or any part thereof, but wholly refuses so to do.

The declaration concluded with the common counts, one of which set out the indebtedness as being for one hundred shares of the stock of the Pike County Railroad, before that time bargained and sold to the defendant.

Defendant plead: 1st, Non assumpsit; 2nd, Nul tiel corporation; 3rd, No consideration; 4th, Agreement that the road should be located near defendant's farm, which was not complied with; 5th, To the first and second counts, that plaintiffs have not been damaged; 6th, To the same counts, that plaintiffs did

not, by their board of directors, authorize books of subscription to be opened.

To the sixth and seventh pleas there was a demurrer, which was sustained by the court. Issues were taken on the other pleas.

A jury was waived, and the cause was tried by the court. The court found the issues for the plaintiffs, and assessed their damages at $3,000.

Defendant thereupon moved the court for a new trial, assigning as reasons therefor, that the finding was contrary to the law and the evidence, that the court had received improper evidence, and that the evidence did not support the declaration.

The court overruled the motion for a new trial, and rendered judgment for the plaintiff upon the finding for $3,000.

The defendant excepted to the finding of the court, to the overruling of the motion for a new trial, and to the final judgment in the case, and filed his bill of exceptions, and prayed an appeal, and as appellant now assigns for error—

That the court erred in sustaining the plaintiffs' demurrer to defendant's sixth and seventh pleas, instead of sustaining the same to the first count of plaintiffs' declaration.

That the court received improper evidence upon the trial.

That the finding and judgment of the court was contrary to the law and evidence.

That the court erred in overruling the motion for a new trial.

Plaintiffs proved the execution of the agreement before recited, on the part of the defendant. They next proved the incorporation of the Pike County Railroad Company, under the general railroad law, by the production of a certified copy of the articles of association filed in the office of the Secretary of State, on the 8th day of February, 1854.

Plaintiffs further read in evidence an act of the legislature, approved February 22nd, 1854, entitled "An act to authorize the construction of the Pike County Railroad," the first section of which provides,

That the Pike County Railroad Company, as formed under their articles of association, etc., is hereby declared to be a valid and subsisting corporation by that name, and is hereby invested with all and singular the rights, privileges and powers contained in an act entitled "An act to provide for a general system of railroad corporations," approved November 5th, 1849, and the said company is hereby authorized to construct the road styled in said articles of association, the Pike County Railroad, as specified in said articles, from a point opposite Naples, on the Illinois river, or from a point on said river not more than three miles distant from said town, to the Mississippi river,

opposite or nearly opposite Hannibal, under said acts, and acts amendatory thereof.

Plaintiff further gave in evidence a supplemental act of the same session, entitled "An act to amend an act entitled an act to authorize the construction of the Pike County Railroad." First section of this act provides that the company, incorporated by an act to authorize the construction of the Pike County Railroad, approved Feb. 22, 1854, be and they are hereby authorized to construct a branch from any convenient point on the line of said road to the city of Quincy, and to connect with any railroad terminating at said city. Second section grants all the powers for obtaining right of way for said company, that are given by the general railroad law. Section third provides that the company are authorized to increase the capital stock to a sum not exceeding two millions of dollars.

Plaintiffs next offered and read in evidence a book, admitted by the defendant to be the record book of the proceedings of the Pike County Railroad Company, formed under the articles of agreement aforesaid, and all the entries and proceedings therein recorded, which were read in evidence, subject to exceptions as to relevancy and sufficiency.

The record so read shows that on the 6th day of February, 1854, there was an organization of a company to be called the "Pike County Railroad Company," under the general railroad law of the State, and the adoption of articles of association as follows:

Articles of Agreement of the Pike County Railroad Company:

In conformity with an act of the General Assembly of the State of Illinois, entitled "An act to provide for a general system of railroad incorporations," the undersigned have associated for the purpose of constructing, owning and maintaining a railroad, as set forth in the following articles:

First. The name of this corporation shall be the Pike County Railroad Company.

Second. The same shall be continued fifty years from the date of its incorporation.

Third. The amount of the capital stock of said company, including the cost of constructing the railroad, the right of way, motive power, and other appurtenances for the completion and running of said road, as near as can be estimated by competent engineers, will be one million dollars, making ten thousand shares of one hundred dollars each.

Fourth. There shall be ten directors to manage the concerns of the company, as follows: Alexander Starne, Solomon Parsons, Ozias M. Hatch, Chauncey L. Higbee, Henry T. Mudd,

Milton Hay, Benjamin D. Brown, Israel B. Donaldson, H. L. Sutphin.

Fifth.   The road to commence at a convenient point, as near as practicable, opposite the town of Naples, at a distance not exceeding three miles from the termini of the Great Western Railroad, on the Illinois river, taking its course through the county of Pike, terminating on the Mississippi river, as nearly opposite the city of Hannibal, State of Missouri, as practicable, a distance of thirty-eight miles, or thereabouts, with power to form connections with the Great Western Railroad, and the Hannibal and St. Joseph Railroad, or either of them.

Sixth.   Solomon Parsons, Henry T. Mudd, Israel B. Donaldson and Ozias M. Hatch, are commissioners appointed to open books for subscriptions to the stock of said road.

Whereupon the following subscriptions were made, to wit:

The record further shows a subsequent meeting of the directors, held on the 18th day of March, 1854, at which time the two acts of the legislature referred to are accepted, and spread upon the record.

The record further shows, that upon the 3rd of September, 1856, in pursuance of public notice, there was a meeting of the subscribers to the stock of the company, and an election of the directors held, at which George W. Shields, J. B. Helm, A. S. Roberts, George Wike, Richard Hays, Wm. F. Hooper, Josiah Lumbard, James McWilliams, Alexander Starne, and O. M. Hatch, were elected directors of the company.

The record further shows, that subsequently, on the same day, the directors so chosen met and organized by appointing A. Starne, President, and O. M. Hatch, Secretary, Marshal Ayres, Treasurer, and C. L. Higbee and M. Hay, Attorneys. At the same meeting there was a report that a survey for the route of the road had been made, but no official report of the survey.

The record showed no further proceedings or action whatever, subsequently to this meeting, on the part either of the directors of the company or the stockholders, and there were no further entries in said book.

The plaintiff further offered and read in evidence, a subscription book, alleged to be the subscription book of the Pike County Railroad Company, and the entries therein, subject to exceptions as aforesaid, which said entries and the obliterations were as follows:

" We, the undersigned, whose names are hereto annexed, do agree to take the number of shares set opposite our respective names, in the capital stock of the Pike County Railroad Company, and pay therefor to the treasurer of said company, at his office in Griggsville, the sum of one hundred dollars for each

share set opposite our respective names, at such times and in such sums as the board of directors of said company may from time to time require, but assessments upon the capital stock of said company shall not be made, nor be payable oftener than once in sixty days, nor more than ten per cent. upon the amount subscribed at any one assessment."

This subscription book began with the entries of all the subscribers to the original articles of agreement, in properly headed columns, together with sixteen other subscribers of one share each, all being the subscribers to the original articles of agreement, and the amounts, being the amounts subscribed to said article by each. These are followed by a number of subscriptions of a later date, which are not obliterated.

Plaintiffs next offered and read in evidence an act entitled " An act to incorporate the Pike County Railroad Company," approved February 14th, 1857, subject to exceptions as the other testimony, for relevancy, etc.

The title of said act, together with the first section thereof, is as follows : " An act to incorporate the Pike County Railroad Company."

SEC. 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly, That Alexander Starne, Ozias M. Hatch, Josiah Lumbard, William S. Hooper, Richard B. Hays, George Wike, Melvin B. Churchill, George W. Shields, J. B. Helm, Milton Hay, and Chauncey L. Higbee, their associates, successors and assigns, be and they are hereby created a body corporate, by the name of the Pike County Railroad Company, with power to build, construct, maintain and use a railroad, from some point on the west bank of the Illinois river, opposite or nearly opposite the town of Naples, in Scott county, running westerly across the county of Pike, by the way of Griggsville, to the east bank of the Mississippi, opposite or nearly opposite the city of Hannibal in the State of Missouri, with power to fix the amount of capital stock, to divide, transfer and increase the same at pleasure, to borrow money, and pledge or mortgage its property or franchises, to condemn, according to law, lands necessary for the track of said road, and for the turnouts, sidetracks and sites for depots, etc., etc., and generally have all the powers and privileges necessary to carry out the intentions of this act. Said company shall have power to construct and build a bridge across any river, creek, lake or stream of water, for the purpose of connecting with other railroads, etc.

SEC. 2. Confers all the rights granted to the Central Railroad Company, also all the rights, privileges and advantages conferred by an act entitled " An act to provide for a general

system of railroad incorporations," approved Nov. 5th, 1859, and the several acts amendatory thereof, upon the company.

SEC. 3. Authorizes township subscriptions to the capital stock of the company, and provides for the mode of making such township subscription, issuing of bonds therefor, and assessing of taxes to pay interest, etc.

The plaintiffs next offered in evidence a book purporting to be, and admitted by defendant to be, a record of the Pike County Railroad Company, as formed under the act last recited, of February 14th, 1857, the plaintiffs insisting and claiming that the said book, and the entries therein, were of the same corporation described in the declaration, and the same corporation to which the records and evidence before adduced pertained; the defendant, on the other hand, objecting that said book and the entries therein were of a different and distinct corporation formed under said act of 1857; and the proceedings and entries in said book were then read to the court, subject to the objections aforesaid, and the exceptions for relevancy and sufficiency as the other testimony.

Said book began with an entry as follows:

Monday, June 15th, 1857. A meeting of the incorporators of the Pike County Railroad Company was this day held at the town of Griggsville; there were present the following named incorporators, to wit: Alexander Starne, Josiah Lumbard, John B. Helm, George W. Shields, Chauncey L. Higbee, and Ozias M. Hatch.

John B. Helm was appointed chairman, and O. M. Hatch, secretary. An election of officers for the ensuing year was then held, whereupon A. Starne was elected President, and Ozias M. Hatch, Secretary, and Marshal Ayres, Treasurer.

The next meeting was August 1st, 1857.

A meeting of the incorporators of the Pike County Railroad Company was held this day; present, A. Starne, George W. Shields, Josiah Lumbard, M. B. Churchill, George Wike, and C. L. Higbee. Amongst the proceedings, it was resolved to proceed at once to make all the necessary arrangements to place the road, or as much thereof as may be thought advisable, under contract, and the president was directed to advertise for proposals.

On the 21st of August a fourth meeting of the incorporators was held, and the president was authorized to employ an engineer, and make contracts for grading, bridging, etc.

On the 7th of October, 1857, a further meeting of the incorporators was held, and amongst other proceedings it was resolved: that an assessment of five dollars for each and every month, be and is hereby levied upon each share of stock subscribed, pay-

able on the first day of each month, and that Marshal Ayres, the treasurer, is authorized to collect and receipt for the same.

A committee was appointed at the same meeting to draft by-laws.

The records show, by various entries of proceedings down to the time of the commencement of this suit, that the company, of whose proceedings it was a record, were actively engaged in the work of constructing a railroad, as provided for under the act of February 14th, 1857.

Defendant then admitted that the calls upon the assessments of stock under the order contained in said book, of date October 7th, 1857, had been regularly given, and defendant had been regularly notified thereof.

Plaintiffs then called *A. Starne* as a witness, having at the instance of defendant been first sworn upon his *voir dire,* who deposed, that he was a subscriber and stockholder of the stock of the Pike County Railroad Company (the plaintiffs) to the amount of $2,000, of which $1,600 were paid, and $400 was unpaid, and that said company was indebted to him for services in an amount more than sufficient to pay the balance so unpaid upon his subscription. Witness further said that he was one of the signers of the articles of agreement of the Pike County Railroad Company, given in evidence in the case, and was a subscriber under said articles for $4,000 of stock; had never received any certificate of stock. (Defendant thereupon objected to the introduction of said witness, because of his interest, and thereupon the said witness executed to the plaintiffs a release, in the words and figures following:

Know all men by these presents, that I, Alexander Starne, of the county of Pike, State of Illinois, do hereby forever release and discharge the Pike County Railroad Company from all liabilities to me of every kind and description whatsoever, from every demand of whatever character which I hold or may have against them, or which may be due, owing or coming to me from them.

*December 1st,* 1859.                    A. STARNE. [SEAL.]

And delivered the said release to the attorney of the plaintiffs; and said release being produced and the execution thereof proved to the court, the plaintiffs again offered to examine said witness, to which the defendant objected, upon the ground that he was still interested in the event of the suit, but the court overruled the objection, and permitted the witness to testify.) Said witness testified that he was elected president of the Pike County Railroad Company, September 3rd, 1856, and has since that time, and up to the present time, acted as president of the company. Witness further deposed, that eight of the ten directors elected September 3rd, 1856, under the first organization,

were corporators named in the act of February 14th, 1857, and that C. L. Higbee and M. Hay, two other corporators in said act, were subscribers to the stock of the old company, and were the attorneys of the company.

Witness was then asked what action was had by the company, or what directions were given by the directors in reference to obtaining an amendment of charter, or obtaining a new charter for the company, prior to the session of the legislature of 1857, which question was objected to, but the court permitted the same to be asked and answered. Witness answered, there was no order of the company or directors on the subject, but a general understanding amongst the directors that we should get a new act or amendment of the charter. Witness went to Springfield during the session of 1857, to superintend the passage of the act, as president of the company, but without any order of the company, and procured its passage. The main object of the act was to obtain the right of procuring township subscriptions. At the time said act was passed, there had been about $35,000 subscribed to the stock of the company, besides the amount appearing by the articles of association; there had been no call made upon the subscriptions up to that time. It was at all times understood that the amount subscribed in the articles of association was not to be called for; the amount of subscriptions appears by book of subscriptions in evidence, and were copied on the book from original subscriptions. I do not know where or by whom the line was drawn across the names.

Two surveys of a route for the road had been made before the act of 1857 was passed. This was all that had been done up to that time. It was determined that the road should be located on the second survey made by Campbell. At the time the act of 1857 was passed, nothing had been paid in on subscriptions; about $15,000 or $16,000 of the subscriptions in the subscription book have been paid in since. A majority of the subscribers have paid. The Pike County Railroad Company have acted under the act of 1857 since it was passed, claiming all the rights granted by both charters.

A majority of the old directors act as directors, and are corporators under the act of 1857. Witness further testified that he considered the two companies or organizations as being the same; opinion of witness was objected to by defendant's counsel.

Witness further said that the subscriptions to the company had been increased by township subscriptions and the subscription of the city of Hannibal, to $295,000; that the company had expended about $250,000. The Pike County Railroad Company, since the act of 1857, have agreed to pay the expenses of former survey.

26

Books for subscription to stock were opened in June, 1856, as appears from book in Mr. Lumbard's banking building, in Griggsville—the same book of subscription here in evidence. Agreement of defendant that was read in evidence came into the hands of witness as president of the company, from N. W. Jones, agent for the company to procure subscriptions.

Witness further testifies, that some time in the fall of 1857 the defendant and a number of others met at the office of witness in Griggsville, for the purpose of seeing what could be done about township bonds. Defendant there said that if we would release him from his subscription he would take bonds. He calculated to pay his subscription. He was going to Ohio to get some money. They would not release him.

The testimony was all objected to as given by said witness, for irrelevancy, and because better evidence existed of matters deposed to by him, and because said witness testified to matter of opinion instead of facts.

Said witness testified, in cross-examination, that it was at a meeting of citizens that defendant had the consultation above detailed, and that he did not know how or when the subscriptions appearing to be erased or obliterated, as shown in the subscription book, were erased or obliterated. Does not know who did it; suppose it was in consequence of an understanding that always existed, that said subscriptions were not to be paid. Does not know whether it was done after the act of 1857 was passed or not, nor by what authority it was done. Said subscriptions so appearing obliterated were made for the purpose of organizing and procuring a charter, and since the passage of the act of 1854, in evidence, it has been considered that said subscriptions were not payable; the way the parties to said subscriptions supposed they would be released therefrom, was by some amendment of the charter, or by procuring some other company to do the work and release subscribers from liabilities.

Does not know whether the act of 1857, and the incorporation of the company therein provided for, would have the effect to release the subscribers to said articles of agreement or not; no calls have been made of said subscriptions.

The directors of the old company or organization have never done any act as a body since September 3rd, 1856; all their proceedings were recorded in the book shown in evidence, purporting to be the record of their proceedings. They have never had a meeting or done any business since; a majority of them, as individuals, considering the new act beneficial, adopted it and organized under it, and claimed the benefit of both, and assessed the $35,000 stock subscribed before the passage of the

act. The work of building the road commenced in the fall of 1857, and was begun and has been carried on since the organization under the act of 1857, and under said organization.

Said witness further testified, that the name of defendant appearing in the subscription book in evidence in this case, was not written there by said defendant, but was copied on said book by witness. A majority of stockholders under former organization have not voted at any election since the act of 1857, but the majority have in some way paid their subscriptions. When incorporators met to organize under the act of 1857, they opened a new book of record, and their proceedings are there recorded.

Witness further said that some of those who were subscribers to articles of association, also subscribed stock under the law of 1857. There has been no abandonment of charter of old organization that he knew of; the directors of the present company have recognized the debt created before the act of 1857.

*N. W. Jones* was next called as a witness for plaintiff, and being sworn upon his *voir dire,* testified he was a subscriber to the stock of the Pike County Railroad Company; subscribed $1,000; had not paid any of his subscription. Defendant then objected to said witness on the ground of interest, and thereupon the witness executed to the plaintiffs, in substance and force the same as the release executed by the witness Starne, heretofore given, and delivered the same to the attorney of the plaintiffs, and the execution of said release being proved, said plaintiffs again offered said witness, and defendant still objected on the ground of interest appearing in the witness in the event of the suit, but the court overruled the objection and permitted the witness to testify.

Witness testified that he did not know whether subscription books were opened or not, at the time defendant's subscription was obtained.

Know Pike County Railroad Company; it had an office at Griggsville since 1854. Mr. Parsons, President of the company, gave me the paper to circulate, which defendant signed. I returned it to Mr. Starne; think subscription books were opened in 1856 or 1857. Witness was present at the time spoken of by witness Starne, when defendant and others were present. Heard the same conversation by defendant testified to by Starne. Witness further testified, that at the request of Mr. Starne he called upon the defendant some time in the year 1857, to see if he would pay an installment of his subscription; defendant then said he would not pay then, but would pay as soon as he got some money from Ohio; there had been a call, I think. The

meeting at which the conversation heard by Starne and witness took place, was in October or November, A. D. 1857.

The work on road commenced in October, 1857.

The plaintiff here rested his case, and the defendant then moved that the court reject and exclude all of said testimony, because of the insufficiency thereof, and because the case made thereby was variant from the allegations of the declaration, but the court overruled the objections.

M. HAY, for Appellant.

C. L. HIGBEE, and W. C. GOUDY, for Appellee.

BREESE, J. The appellee, who was plaintiff in the court below, urges several reasons justifying a recovery in this case, which it is necessary to notice. The declaration contains a special count, averring, that on the nineteenth of March, 1856, the plaintiffs were a body politic and corporate, with power to construct and operate a railroad within the county of Pike, and authorized by law, as such corporation, to secure subscriptions to the capital stock of the company to the amount of one million of dollars, in shares of one hundred dollars each, and, desiring to ascertain what amount of stock would be subscribed, and not having opened regular subscription books, but intending so to do, agreed with the defendant that they would, in a reasonable time thereafter, open books for the purpose of securing such subscriptions, and that they would permit and allow the defendant, when the books should be opened, to subscribe to the capital stock of the company thirty shares of one hundred dollars each, and upon payment therefor, the defendant should be the owner of thirty shares of the capital stock of the company. It is then averred, that the defendant, in consideration of this promise, undertook and promised the plaintiff that he would subscribe to the stock of this company the sum of three thousand dollars, when the books should be opened for subscriptions ; that this promise was by a writing, signed by the defendant, and by him delivered to the plaintiff. It is then averred, that on the same day, subscription books to the capital stock of the company were opened, of which the defendant had notice. The breach is, that the defendant neglected and refused to subscribe anything to the capital stock, accompanied by an averment that the subscription, when the books were opened, was due and payable before the commencement of the suit, and although notified thereof, the defendant has refused to pay any part of the sum of three thousand dollars. The common counts are added, in one

of which the indebtedness is alleged to be for one hundred shares of the stock of the Pike County Railroad, before that time bargained and sold to the defendant.

This is the cause of action as set forth by the plaintiffs, and it is claimed by them, that they are entitled to recover as damages the par value of the stock, or the amount of calls made from time to time upon it, and which, at the commencement of the suit, amounted to fourteen installments, of five per cent. each, making, in all, twenty-one hundred dollars.

This, we do not think, is a fair view of the defendant's liability upon his promise, if one was made to the plaintiffs. His undertaking is, to subscribe a certain amount of stock, when the subscription books should be opened. This promise does not make him a stockholder, and, as such, liable to calls. The company has parted with no stock to him, and can only claim as damages, the actual loss sustained by them by his failure, or refusal to subscribe, when he was notified the books were opened for such purpose. The company has the stock which the defendant promised to take, but did not take. His promise is like any other promise, or agreement to purchase any specific article of property. If the property contracted for be retained by the vendor, and there is no delivery to the purchaser, or offer to deliver, the damages must not be measured by the value of the property ; for it would not be just, in such cases, that the vendor should retain the property, and recover, also, the value of it from the promisor. Some damage might result from the loss of a bargain, and to such the vendor would be entitled, if the extent could be established. In many cases, they would be merely nominal. On an agreement for the sale and purchase of stocks, and a refusal by the purchaser to take the stocks, the measure of damages, ordinarily, might be the difference between the par value of the stocks and their market value, or between them and money. As well argued by the appellant, the defendant having violated his promise by failing to subscribe, he has acquired no right to stock ; nor could a recovery in this action entitle him to become a stockholder. The company retains its stock, and the defendant his money. A stock certificate of three thousand dollars would represent a value to the company equivalent to so much money, and, in a statement of their liabilities, this would appear against the company as so much held by the stockholders, for which the company was responsible. If there is no actual subscription, the company does not incur this liability. There being no special damages alleged, or proved, we do not think the plaintiffs could recover under this declaration, as they have done, the par value of the stock the defendant promised and

agreed to take. A proper count might doubtless be so framed as to justify a full recovery, under sufficient proof.

Upon the common counts, the appellees contend they are entitled to recover, because *indebitatus* assumpsit will lie for stock bargained and sold, and for installments due upon stock subscribed; and they insist, that the defendant was, to all intents and purposes, a stockholder in the company of the plaintiff; that is to say, in the company organized in 1854—for that was the only company in existence at the time of the promise, and that is the company suing.

To determine this point, a brief review of the history of this company, and of the legislation in regard to it, is necessary.

On the eighth day of February, 1854, certain articles of association were filed in the office of the Secretary of State, in pursuance of the general railroad law of 1849, by which an incorporation styled " The Pike County Railroad Company" was formed. On the 22nd February, of the same year, the General Assembly passed an act entitled "An act to authorize the construction of the Pike County Railroad," by the first section of which it was declared, that the Pike County Railroad Company, as formed under their articles of association, was a valid and subsisting corporation by that name, and was thereby invested with all and singular the rights, privileges and powers contained in an act entitled "An act to provide for a general system of railroad corporations," approved November 5th, 1849, and the said company was authorized to construct the road, styled in said articles of association the Pike County Railroad, as specified in those articles, from a point opposite Naples, on the Illinois river, or from a point on said river not more than three miles distant from that town, to a point on the Mississippi river, opposite, or nearly opposite, Hannibal. At the same session, a supplemental act was passed, entitled "An act to amend an act to authorize the construction of the Pike County Railroad," by which the company were authorized to construct a branch from any convenient point on their road to Quincy, and to connect with any railroad terminating in that city; power was also given it to obtain the right of way, as given by the general railroad law; and by section three, the company was authorized to increase the capital stock to a sum not exceeding two millions of dollars. By the articles of association, the duration of the corporation was limited to fifty years, and the amount of the capital stock to one million of dollars. Ten directors were appointed to manage the affairs of the company, and four commissioners appointed to open books for subscriptions.

These directors held a meeting on the 18th of March, 1854,

at which these acts of the General Assembly were accepted and spread upon the records.

On the nineteenth of March, 1856, the appellant signed, with others, the following agreement : " We, the undersigned, agree to subscribe to the stock of the Pike County Railroad, the sums set against our names, when the books may be opened for subscription." Against appellant's name are the figures $3,000.

On the third of September following, there was a meeting, in pursuance of public notice, of the stock subscribers, and an election held for directors, and, on the same day, they met and organized by the election of a president, secretary, and other necessary officers. A report was made at this meeting, that a survey for the route of the road had been made, which was not accompanied by any survey. These facts appear from entries on the book kept by the corporation, and put in evidence. No further proceedings of this board, or of the stockholders, appear on the record. The testimony of Mr. Starne shows that they have never held a meeting or transacted any business since, under this charter.

The appellees read in evidence an act entitled " An act to incorporate the Pike County Railroad Company," approved February 14, 1857, by which Alexander Starne, and certain other persons named therein, their associates, successors and assigns, were created a body corporate, by the name of the Pike County Railroad Company, with power to build and use a railroad, from some point on the west bank of the Illinois river, opposite, or nearly opposite, the town of Naples, in Scott county, running westerly across the county of Pike, by the way of Griggsville, to the east bank of the Mississippi river, opposite, or nearly opposite, the city of Hannibal, in the State of Missouri, with power to fix the amount of capital stock, to borrow money, and pledge or mortgage its property or franchises, to condemn lands for track, etc., and to construct a bridge across any river or lake, for the purpose of connecting with other railroads. This act confers upon the company the rights granted to the Illinois Central Railroad Company, and all the rights and privileges conferred by the general railroad act of 1849, and the several acts amendatory thereto, and authorizes township subscriptions to the capital stock, and is unlimited in duration ; upon condition, however, that the company should expend fifty thousand dollars in the construction of the road, within one year from the passage of the act, and should complete it within two and a half years from the passage of the act.

This corporation, it seems to us, was wholly distinct from that of 1854, to which the promise was alleged to have been made. It nowhere refers to that company, or recognizes it in

any manner, and there are provisions in it materially differing from those in the act of 1854. By the first charter, the capital stock was limited to one million of dollars; a branch road to Quincy was allowed; its starting point was fixed within three miles of Naples; its duration was limited to fifty years, and no points intermediate the Illinois and Mississippi rivers were fixed. By its very terms the act is original, and purports to create a new corporation. There are essential points of difference between the two charters, and the corporators are different, though the main objects of the charter were the same. There is evidence going to show, that the object and intent of this charter of 1857 was to supersede that of 1854, and, we think, taking into consideration the fact, that the company organized under this charter of 1857, without any reference to the acts or proceedings under the charter of 1854, and proceeded to construct the road under it, the fact is pretty well established that the charter of 1854 was no longer of use for the purposes designed. Mr. Starne says, " The directors of the old company have never done any act as a body, since September 3, 1856 — they have never had a meeting or done anything since. A majority of them, as individuals, considered the new act beneficial, and adopted it, and organized under it, claiming the benefit of both, and assessed the stock subscribed before the passage of the act of 1857; that the work of building the road commenced in the fall of 1857, and was begun and carried on under the new organization." There seems, from the evidence, to have been an impression on the minds of the subscribers to the articles of association, that the new charter would supersede these articles, and the acts of the General Assembly based upon them, and the evidence shows that the original subscriptions had been crossed with a pen, and, in that mode, cancelled. But it is insisted, that the defendant, in the fall of 1857, admitted he was liable as a subscriber, and bound to pay the calls. This proof, we think, must dispose of this case. For inasmuch as the suit is brought by the corporation of 1854, a promise made to the corporation of 1857, being a new, distinct and independent corporation, cannot enure, under the allegations in the declaration, to the benefit of the corporation suing. Nor can the defendant be liable on the count for stock bargained and sold, because the proof, if any there be on that point, goes to show that such contract, if made at all, was made with the corporation of 1857, who are not the plaintiffs. If the defendant was a stockholder, it is clear it was in the corporation organized under the act of 1857,— the only operative company acting in building the road, in the fall of 1857, at which time, if at all, the defendant was

Thrasher *v.* Pike County Railroad Co.

notified of the call on his supposed subscription, and that company has not brought this suit.

We think, therefore, under this declaration and proofs as they stand, the appellant cannot be made liable, and this judgment must be reversed. What position the corporation of 1857, suing, might occupy, we do not determine.

It may be well to state here, that we do not think Starne or Jones was a competent witness for the company, for they were both stockholders, and continued so to be, after the execution of the releases. They could be made competent only by an assignment of their stock. The release only went to pecuniary claims upon the company, and could not affect their stock. As stockholders, they are individually liable for all the debts of the company to the amount of their stock. Act of 1849, § 14, Scates' Comp. 940.

*Judgment reversed.*