# THE CONSOLIDATED ICE MACHINE COMPANY

## v.

## ANTON KIEFER.

*Master and Servant—Duty of Master—Reasonable Care—Liability for Causing Death of Servant—Parties Defendant—Joint Liability—Conflict of Evidence—Questions for Jury—Corporations—Stockholder as Witness—Competency of—Damages—Whether Excessive.*

1. It is the duty of the master to use reasonable care to protect his servant from extra hazard. He should not direct the servant to work in a place which he knows, or might by reasonable care and diligence have discovered to be dangerous.

2. In the case presented, it was the duty of the defendant company, in the construction of its refrigerator plant, to use reasonable care to furnish a support sufficiently strong to bear the weight of a certain tank when filled. The servant on his part assumed only those risks incident to his employment, of which he had express or implied notice.

3. Where two corporations are co-operating in the erection of a structure, and their successive concurrent negligence causes the death of an employe of one of them, they are jointly liable.

4. In an action against a corporation to recover damages for causing the death of the plaintiff's intestate, a stockholder of the defendant corporation is incompetent as a witness as to events prior to the death of the plaintiff's intestate.

5. Where the evidence is conflicting in regard to material matters, it is the duty and province of the jury to determine the weight and credit to be given the testimony of the several witnesses.

6. In cases like the one presented, it is the peculiar province of the jury to estimate and award, under the evidence introduced, the amount of damages that plaintiff should recover.

[Opinion filed May 11, 1888.]

APPEAL from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding.

Messrs. LEO RASSIEUR and W. C. KUEFFNER, for The Consolidated Ice Machine Company, appellant.

The Consolidated Ice Machine Company is not liable, unless it could, by the exercise of ordinary care and diligence, have discovered that the support for this tank was insufficient.

"As respects his duty toward an employe in his service, the employer is not bound to provide absolutely safe machinery. The law imposes on the employer only the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery." Camp Point Mfg. Co. v. Ballou, 71 Ill. 418; Chicago R. R. Co. v. Sweet, 45 Ill. 202.

"The law imposes on an employer only the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery for the use of their employes." Kranz v. White, 8 Ill. App. 583.

"A servant, when he engages in an employment, is held to have done so with a knowledge of the risk of its ordinary hazards, whether from the carelessness of fellow-servants in the same line of employment, or from latent defects in, or the ordinary dangers in the use of machinery and appliances used in the business." Richardson v. Cooper, 88 Ill. 273.

"The law requires of both employer and employe the exercise of such a degree of care as under all the surrounding circumstances of the case a reasonable man would exercise to avoid danger." C. & A. R. R. Co. v. Mahoney, 4 Ill. App. 262.

"Where an employe, after having an opportunity to become acquainted with the risks of his situation, accepts the same, he can not complain if subsequently injured by such exposure." Chicago, etc., Ry. Co. v. Geary, 104 Ill. 383; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417.

"An employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein, after he has knowledge of such defect, and continues his work without objection." The Chicago, etc., R. R. Co. v. Munroe, 85 Ill. 25.

"Although machinery furnished by a railroad company for the use of its employes may be unsafe, yet if an employe, knowing the character of the machinery, continues to use it, he is bound to exercise care commensurate with the danger, and if he fails to do so and is injured, his negligence will preclude a recovery against the company on account of such injury." Toledo, etc., Ry. Co. v. Asbury, Adm'r, 84 Ill. 430.

"If a plaintiff by the exercise of ordinary care and prudence might have avoided the consequences of the defendant's negligence and failed to do so, he can not recover of the latter for mere negligence." Abend v. Terre Haute, etc., R. R. Co., 111 Ill. 203.

"Should an employe discover that the service has become more hazardous than usual, or than he had anticipated, by reason of defective machinery, etc., the general rule is, he must quit the service or assume the risks to which he is exposed." Missouri Furnace Co. v. Abend, 107 Ill. 51.

"The servant seeking to recover for an injury, takes the burden upon himself of establishing negligence on the part of the master, and due care on his part. He is met by two presumptions, both of which he must overcome." Wood on Master and Servant, Sec. 382.

"The mere relation of master and servant can never imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to take care of himself. And so it is held that where the defects in the machinery are as well known to the servant as the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master, by urging on the servant, or coercing him into danger, or in some other way, directly contributed to the injury." Pennsylvania Co. v. Lynch, 90 Ill. 335.

Mr. M. MILLARD, for the Heim's Brewing Company, appellant.

The plaintiff here is suing his own master for a breach of duty, and has joined with him another party who was not sustaining that relation to him for the breach of another duty, and the declaration charges these breaches as separate acts of negligence. It does not allege a joint duty and is not based upon the theory of joint action or neglect, and therefore does not show a joint liability. Instead of charging concerted action it alleges separate conduct, and as the wrongful act of one party rests upon the rights of a servant against his master and of the other upon the rights of a person who is in no way related

to the wrong-doer, it is clear that these causes of action can not be joined in the same suit. Yeazel v. Alexander, 58 Ill. 254; C. & N. W. Ry. v. Scates, 90 Ill. 586.

It is plain from the testimony that the accident was caused by a latent defect in the swivel of the truss rod, or hog chain, as some of the witnesses call it. This defect was not seen by anybody, and was not visible to an ordinary inspection. It was perfectly concealed, for the witnesses describe it as a welding on the outside, forming a crust or thin skin, while ninety per cent. of the metal did not unite. Nothing, therefore, could render it more latent.

In such cases there is no liability, because there is no negligence. See Beach on Con. Neg., Sec. 133, citing Malone v. Hathaway, 64 N. Y. 5; Georgia Rd. v. Kenney, 58 Ga. 485; Ladd v. New Bedford R., 119 Mass. 412; Ford v. Fitchburg R., 110 Mass. 240; Ruby v. Steamship Co., 29 La. Ann. 791; Murphy v. Boston R., 88 N. Y. 146.

Messrs. G. B. Burnett, R. A. Halbert and Flannigan & Rafter, for appellees.

Both defendants were acting in concert and co-operating to effect a common purpose—the erection of the refrigerator plant; both, Gohn, Heim's carpenter, consulting with Denney, the superintendent of the ice company, were present, and deceased was killed through and by means of their concurring negligence. This brings the case within the rule announced by the Supreme Court in Yeazel v. Alexander, 58 Ill. 254.

If two or more persons are jointly concerned in a particular act resulting in injury to another, they may be sued jointly. So far has this been carried, that it is held in Massachusetts that one who superintends, although gratuitously, and not under contract, work done on premises of another, and through whose negligence, as well as of such other, an injury occurs, is liable therefor in an action against him and such other jointly. Wharton on Negligence, Sec. 788; Hawkesworth v. Thompson, 98 Mass. 77.

It is a familiar rule that if the concurrent or successive negligence of two persons combined together, results in an

injury to a third person, he may recover damages of either or both. Thompson on Negligence, p. 1088, and authorities there cited. In this case deceased lost his life through the concurring and successive negligence of the ice machine company and the brewing company combined, and the action may be maintained against them, either severally or jointly. W., St. L. & P. Ry. Co. v. Shacklett, 105 Ill. 364.

If deceased is to be considered as a servant of the brewing company, then the latter could not, by such proof, absolve itself from the absolute duty which the law imposed upon it to furnish safe and sufficient structures and appliances for doing its work. It could not shift this responsibility upon another servant to whom it had delegated authority to provide the structure, because the act of such servant in providing the structure was in law the act of the brewing company itself. Hutchinson v. R. R. Co., 6 Eng. Ry. and Canal Cases, 442; Swett v. C. & N. W. R. Co., 45 Ill. 197.

A direction given to a foreman, which, if followed, would have prevented injury to a servant, is not sufficient in law to exonerate the master from liability. Avilla v. Nash, 117 Mass. 318.

In all cases the master must show that he in fact adopted such precautions as ordinary prudence suggests, and failing in that, he is liable, although the injury resulted in part from the negligence of a co-servant. Cayzer v. Taylor, 10 Gray 274. If deceased is not to be considered a servant of the brewing company, then his relation to that company was that of one who was impliedly invited by it upon its premises. In such case the duty of the brewing company was to warn deceased of any danger of which the brewing company had knowledge, or of which it ought to have had knowledge, and of which deceased was not aware. Samuelson v. Cleveland, etc., Co., 49 Mich. 164; Coughtry v. Globe Woolen Co., 56 New York, 124. Such being the law, it was not competent for the brewing company to prove that it had instructed its foreman to build a good strong truss, because whether or not it had given such instructions, was wholly immaterial.

GREEN, P. J. Anton Kiefer, administrator of his deceased son, John Kiefer, brought this suit against appellants to recover damages for the death of his intestate, for the benefit of the next of kin.

The negligence alleged as creating the liability, is that the brewing company failed to exercise care in providing supports safe and sufficient to support an iron tank, part of a refrigerator plant, and the ice machine company carelessly and negligently undertook and attempted the erection of the plant and directed deceased, then in its service, to go upon the roof of the engine house of the brewery, when it knew, or by the exercise of ordinary care and prudence might have known, the supports for said tank were wholly insufficient; and while deceased was upon the roof performing his work as directed, without knowledge of the insufficiency of the supports, the tank, by reason of such insufficiency, fell, taking with it a portion of the roof upon which deceased was then standing, and thereby he was precipitated into the engine house and killed.

It appears by the record that the refrigerator plant was being put up by the ice machine company at the instance of its co-defendant, the latter undertaking as its part of the work to fix the location for the tank and to construct a support for it. The support furnished was a truss, composed of timber, and hog chain underneath, the hog chain consisting of two iron rods anchored one in the north and the other in the south wall of the engine room and joined in the center by a swivel. From this truss cross timbers were run across and rested upon the top of the east wall, and upon this structure the tank, made of iron, was placed. It fell by reason of the support breaking, and carried with it the portion of the roof on which deceased then stood doing some work on the tank, precipitating him to the floor of the engine house and killing him. He was a laborer, then in the employ of the ice machine company.

It was the duty of the ice machine company to use reasonable care to protect its servant, the deceased, from extra hazard, and not direct him to work in a place which it knew, or might by reasonable care and diligence have discovered, to be dangerous.

It was the duty of the brewing company in performing that part of the work it had undertaken to do in effecting the common purpose of appellants, the construction of a refrigerator plant, to use reasonable care to furnish a support sufficiently strong to bear the immense weight of the tank when filled. The deceased on his part assumed those risks only, incident to his employment, of which he had express or implied notice. This risk and peril in the performance of the work he had contracted to do, ought not to have been increased by the malfeasance or negligence of those employing him. Wharton on Neg., Sec. 206, 207, 208, 209, notes, and cases cited. The appellants are also to be held liable for all the consequences which might have been foreseen and expected by them as the result of their acts or omissions. If it is proven the structure erected by the brewing company was being used by its permission, it would be probable the employes of the ice machine company would be obliged to work on or about the tank, and in such employment, if the structure was insufficient and unsafe, it was a consequence to be apprehended that the tank would fall, and carry in its fall and injure those so at work on or about it. Weick v. Lander, 75 Ill. 93; Samuelson v. Cleveland Iron Co., 49 Mich. 164; Coughtry v. Globe Woolen Co., 56 N. Y. 124.

It is contended, however, on behalf of appellants, that they are absolved from any liability, because the brewing company used the reasonable care required of it by the employment of competent mechanics and use of suitable, sufficient and good material in the construction of said support, and it broke by reason of a hidden defect in the weld in the swivel, which could not have been discovered by careful examination, and also that deceased was warned by the superintendent not to go upon the roof until the water was let out of the tank, but not heeding the warning, went into the place of danger, and by his own negligence caused his death. In support of these theories, at the trial defendants introduced testimony showing the carpenter employed in erecting said support was competent, the lumber used was fit and suitable, and the hog chain was made by a reputable firm whose business it was to make

such appliances. John, the carpenter, also testified for them that, in his opinion, the swivel first gave way, and the timbers broke because of that, and because there was more weight put on them than he was told would be; that the tank weighed more than twice as much as he was told it would; and another thing, the swivel was made of bad iron. On their behalf also, Elliot, manufacturer of frogs and trusses, and a machinist, Beckmann, an engineer and machinist in the employ of the brewing company, Gains, practical worker in iron, Wilson, a blacksmith, Lich, a blacksmith, Meyer, a blacksmith, and Manion, a blacksmith, were called as expert witnesses, and gave as their opinion that the hog chain in question would support a weight much greater than that of the tank when filled, if the weld in the swivel had not been defective, and testified the defect was latent, and attribute the breaking of the truss to this defect.

Three of these experts testify the only sure way to discover such defect would be a test by putting a weight or strain on the iron. One of the experts, who testified the swivel, if well made and of good material, would stand a strain of 140,-000 lbs., admitted he testified before the coroner's jury, the swivel, under same conditions, would stand a strain of thirty tons only. Another, who testified the swivel, if properly made, would stand a strain of 80,000 to 100,000 lbs., testified before the coroner's jury it would stand a strain of twenty to twenty-five tons.

Upon the second point the proof, when carefully examined, does not, as we think, establish the fact that deceased was warned of the danger of going upon the roof, or knew, or might have known by seeing the truss as it appeared when finished, that it was unsafe or insufficient. He had been at work for the ice machine company only about a day and a half, and it does not appear by the evidence he had knowledge or experience enabling him to detect by observation the insecurity of the structure. On behalf of plaintiff, Stith, a laborer in the employ of the ice machine company, and who had worked in a rolling mill for a long time, Toys, a carpenter, who had built trusses for the support of heavy burdens, Ellis,

the blacksmith who made the swivel, Dennety, superintend-
ing the work on behalf of the ice machine company, all testi-
fied the truss as constructed, if without defect in material
used, was insufficient and not strong enough to support
the weight of the tank when filled.  The last named wit-
ness, who had eight years experience in the construction
of refrigerator plants, testified also, that when this sup-
port was completed, and before the accident, he called the
attention of Heims (who was there acting for the brew-
ing company) to the structure, told him it was not strong
enough and would not sustain the tank, and he ought to sup-
port it with two additional cross beams and an additional hog
chain.  It also appears in evidence that Heims, when he
gave the order for the hog chain which was used, to the firm
who furnished it, did not disclose the use or purpose for
which it was to be employed.  Bevelot, a witness for plaintiff,
testified also that Dennety directed deceased, himself and
another employe to go upon the roof to fit up a heater on top
of the tank and do some other work there; that such direction
was obeyed, and while on the roof the tank fell, and with it
the roof and those on it, including Kiefer.  Dennety denied
giving such direction.  It thus appears that Heims was guilty
of negligence in not informing the firm which furnished the
hog chain of the use for which it was intended, so that care
in making it and testing its strength might be insured, and
defects in it, if any, thus be detected.  This, with all the
other evidence in the case, justified the jury in finding appel-
lants guilty of the negligence charged.  True, the evidence
was conflicting in regard to material matters, but it was the
duty and province of the jury to determine the weight and
credit to be given the testimony of the several witnesses;
these witnesses were before the jury; their manner while
testifying, their apparent intelligence, the means of knowledge
disclosed, the discrepancies in their testimony, the probability
or improbability of the statements made by them, were means
whereby the jury were better enabled to reach a correct find-
ing than we could, and we decline to abrogate the rule adhered
to by our Supreme Court in like cases and invade this province
of the jury.  Shevelier v. Saeger, 121 Ill. 568.

It is further insisted, however, that the defendants can not be held *jointly* liable, because, as counsel say, "plaintiff is suing his own master for a breach of duty, and has joined with him another party, who was not sustaining that relation to him, for the breach of another duty, and these breaches are charged as separate acts of negligence."

We do not so understand the averments or the proof. The appellants were acting in concert, co-operating in the erection of the plant; the brewing company was negligent in providing a structure which was unsafe and insufficient whereby deceased incurred an extra peril when at his work, not incident to his employment; the ice machine company was negligent in directing deceased to work in this place of danger, it having knowledge, and he being without notice or knowledge of such danger, and the successive concurrent negligence of appellants thus united in causing the death of Kiefer.

Persons who co-operate in an act directly causing an injury are jointly liable for its consequences. If they act in concert, or if they unite in causing a single injury, although acting independently of each other, they are jointly liable. Shearman & Redf. on Negligence, Sec. 58; Wharton on Neg., Sec. 788, and notes.

Error is also assigned for the refusal of the court to permit Heims to testify; but it appeared he was a stockholder in the brewing company, a private corporation, and for that reason was an incompetent witness. Thresher v. Pike Co. R. R., 25 Ill. 393.

By the statute he was competent as to any conversation or admission by him, testified to by any witness for plaintiff, and occurring before the death of Kiefer, but the offer by the appellants was a general one to prove by this witness facts, material to the defense, prior to the death of Kiefer, not confining his testimony to any conversation or admission of his prior to such death, testified to by a witness for plaintiff, and the ruling of the trial court was right.

It is also claimed as a sufficient cause for reversal, that the amount of $2,500 awarded as damages, for which sum judgment was rendered, is excessive. It is the peculiar province

of the jury in this class of cases to estimate and award, under the evidence introduced, the amount of damages plaintiff ought to recover, and upon an examination of the evidence in this case we are unable to discover that the jury acted improvidently or awarded excessive damages. City of Chicago v. Major, 18 Ill. 349; C. & A. R. R. Co. v. Shannon, 43 Ill. 346; City of Chicago v. Scholten, 75 Ill. 468.

We are satisfied upon a careful inspection of the record there is no substantial error in the ruling of the court below, or in the rendition of the judgment appealed from, requiring its reversal.

The judgment is affirmed.

*Judgment affirmed.*