ISABEL KELSEY                 .

*v.*

FANNIE M. SNYDER *et al.*

*Filed at Ottawa November 13, 1886.*

1.   WITNESS—*competency—of the complainant in a suit against an administrator and heir.*   On a bill against an administrator of an estate and the heir of the intestate, to declare and enforce a resulting trust as to property in the name of the intestate, the complainant is not competent to testify, in his own behalf, as to transactions and conversations with the deceased, in his lifetime.

2.   SAME—*practice—time to object to competency of witness.*   An objection to the competency of a party to a bill in chancery to testify against parties defending as administrator and heir of a deceased person, is not waived by failing to interpose it at the time of taking the deposition of the witness, but such objection is good if taken on the hearing.

3.   At common law, an objection to the competency of a witness on the ground of his interest, which could be removed, by release or otherwise, was waived by a failure to make the same in apt time, so as to afford an opportunity to obviate it.   But this rule did not apply to objections that were incurable, as, where the evidence was irrelevant.

4.   RESULTING TRUST—*evidence.*   If a party whose money is used in acquiring an interest in a mine or other real estate, takes the notes of the party in whose name the conveyance is taken, and proves them against his estate, this will rebut any claim of a resulting trust in favor of the payee of such notes.

5.   RESCISSION—*for fraud—placing other party in statu quo.*   Before a party can have a contract rescinded on the ground of fraud, he must return,

or offer and be able to restore, whatever he may have received which may be of any value. If such party has disposed of any property transferred to him by the other party, which has a value, he can not have the contract rescinded in a court of equity.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. GRANVILLE W. BROWNING, for the appellant:

The objection to the competency of the witness was made too late. *Lockwood* v. *Mills,* 39 Ill. 602 ; *Walker* v. *Dement,* 42 id. 275 ; *Webb* v. *Insurance Co.* 5 Gilm. 225 ; *Moshier* v. *Knox College,* 32 Ill. 163 ; *Gregory* v. *Dodge,* 14 Wend. 593.

Julia Glass' testimony, alone, establishes a trust in favor of Mrs. Kelsey, in the mining property. We need no other evidence to show that the pretended assignment of August 24 was a fraud, but it corroborates the testimony of appellant, and makes it so strong as to be irrefutable. Story's Eq. Jur. sec. 1201 ; *Nicholas* v. *Thornton,* 16 Ill. 113 ; *Collins* v. *Smith,* 18 id. 160 ; *Kane County* v. *Herrington,* 50 id. 232 ; *Reed* v. *Petersen,* 91 id. 288 ; *Cramer* v. *Hoose,* 93 id. 503 ; *Weaver* v. *Fisher,* 110 id. 146 ; *Franklin* v. *McIntyre,* 23 id. 91 ; *Cookson* v. *Richardson,* 69 id. 137 ; *Loften* v. *Witboard,* 92 id. 461 ; *Smith* v. *Smith,* 85 id. 189 ; *McNamara* v. *Garrity,* 106 id. 384 ; *Mason* v. *Showalter,* 85 id. 133 ; *Seaman* v. *Cook,* 14 id. 501.

Inadequacy of price is evidence of fraud. Story's Eq. Jur. secs. 188, 246 ; *Reed* v. *Petersen,* 91 Ill. 288 ; Kerr on Fraud; 189, 190.

Mr. CHARLES A. HILL, for the appellees:

The complainant was not a competent witness. *Marshall* v. *Peck,* 91 Ill. 187 ; *Wachter* v. *Blowney,* 104 id. 614 ; *Cassel* v. *Cassel,* id. 361 ; *McCann* v. *Atherton,* 106 id. 34 ; *Plain* v. *Roth,* 107 id. 595 ; *Ferbrache* v. *Ferbrache,* 110 id. 210.

Having taken notes for the money she claims to have advanced for opening and developing the mine, and proved the same as a claim against Benson's estate, she is equitably estopped from claiming any interest in the mine itself.

The rule is inflexible that a party can not rescind a contract of sale, and at the same time retain the consideration received. If he rescinds, he must restore the property purchased, in as good condition as when he received it. "He must put the other party in as good a condition as he was in before the sale, by a return of the property purchased." *Buchanan* v. *Horney,* 12 Ill. 338; *Bowen* v. *Schuler,* 41 id. 195; *Wolf* v. *Deitsch,* 75 id. 210; *Livingston* v. *Short,* 77 id. 591; *Smith* v. *Brittenham,* 98 id. 197; 109 id. 550; *Strong* v. *Lord,* 107 id. 25.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 16th of June, 1880, Walter H. Putnam and Ira F. Benson concluded an agreement, which was then reduced to writing, and signed by the respective parties. The writing recites, that "whereas, the said Putnam is the legal owner of the 'Milk Maid' mining claim, lode or lodge, situate about one mile north of the town of Silver Cliff," (Custer county, Colorado,) "and desires additional capital to procure machinery and further develop the said mining claim, and the said Benson has agreed to furnish the capital hereinafter mentioned, for that purpose, now, therefore, it is mutually agreed as follows, to-wit: First, the said Putnam agrees to sell and convey to the said Benson a one-half interest in and to the said mining claim, for and in consideration of the sum of $2500 to be by him, the said Benson, furnished, for the purpose of developing the said mining claim; and the said Putnam further agrees that he will, within thirty days hereafter, furnish an abstract showing good title thereto, and will make, execute and deliver a good and sufficient deed therefor to the

said Benson, his heirs or assigns.  *  *  *  Second, the said Benson agrees to pay, upon the execution of this agreement, the sum of $400 in cash, and further procure from George K. Clark an order on the Bull Domingo Mining Company for one hoisting engine and appurtenances, valued at $1000, and agrees further to pay the remainder in monthly payments, as required by the necessities of the work.  *  *  *  Fourth, that in case said mining claim should prove valueless as a mine, then the said hoister and other machinery belonging or appertaining to the mine, is to be the property of the said Benson, and shall be subject to his order." A deed was made by Putnam to Benson, in conformity with this agreement, on the 30th of June, 1880. Benson died intestate, on the 5th of July, 1880, leaving surviving him, no widow, but one child, Fannie M., intermarried with Elmore Snyder, his sole heir-at-law. Administration of his estate was granted to Chester K. Snyder, by the county court of Grundy county.

On the 3d of September, 1880, Isabel Kelsey filed, in the county court of Grundy county, her claim against the estate of said Ira F. Benson, deceased, the fourth clause of which reads thus: "Moneys borrowed, from time to time, since October, 1873, by said Benson, of claimant, under promise of repayment, but never repaid, and for which notes were given, which notes were kept in Mr. Benson's satchel, and are not now in possession of claimant, $5500." Subsequently, on September 15, 1881, this original claim was amended so as to include several other notes, one for the principal sum of $2000, another for $3000, both of which were claimed to be lost; two others, for the principal sum of $1200 and $275, respectively, which were attached to the claim, making four in all, so attached, and increasing the claim to some $18,000 or more. This claim, as amended, was allowed on the same day, (September 15, 1881,) to the amount of $8000, in the seventh class.

On the 24th of August, 1880, said Isabel Kelsey, by an instrument in writing signed by her, of that date, purported, "for and in consideration of a deed of conveyance of the Milk Maid deposit or lode, situated in Hardscrabble mining district, Custer county, Colorado, dated August 17, 1880, * * * to sell, assign, transfer and set over to Fannie M. Snyder, the grantor in said deed," her ("my") "claim against the estate of Ira F. Benson, deceased, to the extent or amount of $2000, said estate being now administered in the county court of Grundy county." And she therein purported to direct that the administrator of said estate pay said Fannie M. Snyder, or her attorney, from the dividends or moneys due or declared upon said claim, said sum of $2000, and which sum she further purported to declare was "in payment for said Milk Maid deposit or lode, conveyed as aforesaid." A deed was executed and acknowledged by Fannie M. Snyder, her husband, Elmore Snyder, joining therein, on the 17th of August, 1880, purporting to convey to Isabel Kelsey, by what may be assumed to be a proper description, "an undivided one-half interest" in the mine and its appurtenances.

On the 18th of September, 1880, said Isabel Kelsey, by her deed of that date, purported to convey the same mine and property to C. H. Horine, F. M. Horine and Fred Howard, for which they, therein, undertook to pay her the sum of $2000, as follows: cash, at the delivery of the instrument, $500, and the sum of $1500, payable out of the first yield of the mine. And they further agreed that "in the event of the said mining property not yielding sufficient to pay said $1500, then all working apparatus, such as machinery and tools, shall be sold to pay said $1500."

The bill by Isabel Kelsey charges, in substance, that Ira F. Benson bought, with money furnished by her for that purpose, the half interest he had in the mine, etc., by conveyance from Putnam; that she furnished $2000 for that purpose; that the deed should have been taken to her, but, for con-

venience, it was taken to Benson, he intending to convey to her later; that after the death of Benson she was induced, by false and fraudulent statements, and accepted a deed of conveyance of a half interest in the mine, of Fannie M. Snyder, sole heir-at-law of said Benson. These allegations were put in issue by the answer, and, that appellant should recover, it was asserted that they should be proved.

Appellant's deposition was taken, and in it she testified to transactions and conversations with Benson in his lifetime, and at the hearing, counsel for appellees objected to the reading of that part of her deposition. The court heard the deposition, subject to the objection, and the first question now to be considered is, shall the part of her deposition thus objected to, be received and considered as competent evidence in the case.

The adverse parties defend as administrator and heir-at-law of Ira F. Benson, deceased, and it is not denied that the evidence objected to falls within the second section of the statute in relation to evidence and depositions, (Rev. Stat. 1874, p. 488,) and would have been inadmissible if the objection had been interposed in apt time. But counsel contend that the objection should have been taken at the time of the taking of the deposition, and that it was too late to urge it, for the first time, on the trial in the circuit court, and in support of this he cites *Frink* v. *McClung*, 4 Gilm. 569, *Goodrich* v. *Hanson et al.* 33 Ill. 498, and *Warren* v. *Warren*, 105 id. 568. The objection to a witness, on account of interest, might, at common law, be obviated upon the trial, by the execution of an instrument having the effect to release that interest, and hence it was required, as held in the cases cited, that an objection on account of interest should be made at the earliest opportunity, so that the party calling the witness might have time, if possible, to obviate the objection, by release or otherwise. In *Warren* v. *Warren*, no objection was taken on the hearing. But this rule did not apply as to objections that

were incurable, as, for instance, that the evidence was irrelevant. (*Lockwood* v. *Mills et al.* 39 Ill. 606.) And the philosophy of the rule is stated in *Clauser et al.* v. *Stone,* 29 Ill. 114. It is not possible that appellant could, by any act of the court or of herself, have been rendered competent to testify as to the matters to which the present objection goes. She is no worse off, the objection having been urged upon the trial, than she would have been had it been urged at the time of taking the deposition. She is absolutely disqualified to testify as to those matters. *Cassel* v. *Cassel,* 104 Ill. 361; *Wachter* v. *Blowney,* id. 614; *McCann* v. *Atherton,* 106 id. 34; *Plain* v. *Roth,* 107 id. 595; *Ferbrache* v. *Ferbrache,* 110 id. 210.

Omitting the testimony objected to, the only evidence relied on to establish a trust, as charged, is that found in the testimony of the colored woman, Julia Glass; but this is plainly insufficient, for two reasons: First, she says that the money she saw paid, and the conversations she heard, were about three years before the death of Benson, whereas, we have seen the purchase of the property by Benson was less than one month before his death; and second, she says that she heard Benson tell appellant that a part of the mine should be hers. But what part? The answer is not given.

The foundation of the bill thus failing, it is useless to consider the case farther. But we will add, that even if the entire deposition of Mrs. Kelsey were admitted, the proof fails to establish a resulting trust. If she paid the money for the mine, then, in equity, the one took the place of the other; but she took Benson's notes for the money and probated them against his estate. It is not possible that she both bought the mine herself, through Benson, and at the same time loaned Benson the same money with which he bought it for himself. The execution of the notes rebuts the claim of a trust.

We are not satisfied that the evidence sufficiently proves any fraudulent conduct on the part of the appellees. But even if fraud existed, and the case were one in all other respects in

which relief could be granted, we think relief should not here be granted as prayed, because appellant has not returned, or offered to return, nor can she return, what she received from the appellee Fannie M. Snyder. Appellant conveyed everything to Horine & Co., under a contract, and even if it be true that the mine is unproductive, it does not follow that it has no value; and then, the machinery which went with it is not shown to have been destroyed or valueless, and it is neither returned nor offered to be returned.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*