## C. H. Albers Commission Co. v. Marcus Sessel, Ex'r.

1. Witnesses—*Stockholders in Corporations.*—At common law, a stockholder, being interested in the event of the litigation, was not allowed to testify, generally, in favor of the corporation.

2. Same—*Objections to be Made in Apt Time.*—Where the testimony of a disqualified witness is given in the form of depositions, and no objection interposed at the time, nor in the court at any time preceding the trial of the cause, such objection at the trial only, is ineffective, for

the reason that a failure to make it before that time operates as a waiver of the objection.

3. LIMITATIONS — *New Promise—Statements to Strangers.*— Statements made to a stranger, and not to the party claiming the indebtedness, do not waive the statute of limitations to a debt barred by it.

Assumpsit.—Claim in probate. Trial in the Circuit Court of Macoupin County, on appeal from the County Court; the Hon. ROBERT E. SHIRLEY, Judge, presiding. Verdict and judgment for claimant; appeal by defendant. Heard in this court at the November term, 1899. Affirmed. Opinion filed February 27, 1900.

JOSEPH S. LAURIE, attorney for appellant.

E. W. HAYES and BELL & BURTON, attorneys for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

Appellant filed its claim for probate against the estate of Peter J. Hendgen, deceased, for a balance alleged to be due for loss in the purchase and sale by appellant, for the deceased, of May wheat, 1882. The claim was allowed by the County Court in the sum of $1,743.03, and the case was appealed to the Circuit Court, where, after a trial by jury, appellant was defeated, and has appealed to this court, claiming various errors in the trial court, by which a reversal of its judgment is sought. The defenses interposed to the claim were the statute of limitations, and that the transactions out of which the claim grew were mere gambling in options.

The only evidence in the record by which the claim could be established is the testimony of Albers, Hazard and Kiersey, witnesses called by appellant, whose depositions had been taken and were read upon the trial. These witnesses were stockholders in the appellant corporation, and the testimony of each was objected to at the trial upon the ground of interest and incompetency. The court, however, overruled the objection, to which appellee excepted, and appellee has in this court assigned cross-errors upon the record, and insists that such action of the court was erroneous, and

argues that inasmuch as the only evidence for appellant upon the trial was incompetent, there is no evidence in the record to support a verdict in its favor, and therefore the verdict that was returned was right, and the errors here insisted upon by appellant, if any such exist, are immaterial and harmless. In Consolidated Ice Machine Co. v. Kiefer, 134 Ill. 495, where the suit was between an administrator and a corporation, it was held that a stockholder therein was interested, and therefore incompetent to testify generally, on behalf of the corporation, when called adversely to the administrator. At common law, a stockholder, being interested in the event of the litigation, was not allowed to testify, generally, in favor of the corporation. Thrasher v. Pike County Railroad Co., 25 Ill. 393, and cases cited. Tested by these decisions it is clear to us that Albers, Hazard and Kiersey, being stockholders, as they were, in the appellant corporation, were interested in the litigation, and were therefore incompetent to testify generally, as they did, on behalf of the corporation, having been called by it adversely to appellee.

It is, however, insisted that the objection to the competency of these witnesses was too late to be availing to appellee. That the testimony of the witnesses having been given in the form of depositions, and no objection having been interposed at that time, nor in the court at any time preceding the trial of the cause, that such objection at the trial only, was ineffective, for the reason that a failure to make the objection before that time operated as a waiver of such objection. There is force in this position. While it was held in Kelsey v. Snyder, 118 Ill. 544, that objection to the competency of a witness, who had testified in the form of a deposition, might be taken for the first time upon the hearing, still such statement of the rule was by the court limited to such witnesses as were incapable of being rendered competent by release, and the like, as at common law. Had this objection to the witnesses in this case been made at the first opportunity, it may be appellant could have procured them to divest themselves of their

interest as stockholders in apt time for the trial, and thereby have rendered them competent, and thus have secured the benefit of their testimony.

We come, then, to the consideration of the errors urged upon our attention by appellant, whereby it seeks to effect the reversal of the judgment of the trial court, which may be comprehensively stated to be that the verdict is against the evidence in the case, and the court refused proper instructions to, and misdirected the jury to the prejudice of appellant.

It is first complained that the evidence fails to prove that the transactions out of which the claims of appellant grew were of the nature of gambling deals in options, and upon this subject the court misdirected the jury. We find no warrant in the evidence that the claim of appellant is of such nature as to be justly characterized as falling within the prohibition of the statute concerning options, but on the contrary we think the positive evidence is to the effect that the grain was purchased by and delivered to appellant for Hendgen at his request, and by like request sold for his account, whereby the loss ensued. It may be fairly said, we think, there was no evidence upon which to base the instructions that were given to the jury upon this question, and if appellant has been prejudiced by such instructions, it will follow that the judgment must be reversed; and this brings us to the consideration of the remaining defense urged upon the trial—the statute of limitations.

The claim filed by the appellant, independently of the alleged credits, shows upon its face that the statute of limitations had run against it many years prior to its being filed, and unless there was proof of such an acknowledgment of the debt, and promise to pay it by the deceased, within five years prior to the filing of the claim, as would in law revive it, there could be no recovery, however clear and positive the proof of the original liability. And the authorities are clear that statements made to a stranger, and not to the party claiming the indebtedness, would not revive a debt barred by the statute. Collar v. Patterson,

137 Ill. 403, and authorities cited. In Waldron v. Alexander, 136 Ill. 562, the court held an instruction to be substantially accurate which stated that an acknowledgment within five years of the debt that would remove the bar of the statute of limitations, can not be inferred from any language or expressions which are equivocal, vague or indeterminate, and which lead to no certain conclusion, but the acknowledgment and promise to pay the debt, in order to avoid the bar of the statute, must arise out of such facts as identify the debt with such certainty as will clearly determine its character, fix the amount due and show a present, unqualified willingness and intention to pay it. Where payments operate to take a case out of the bar of the statute it is upon the ground that they amount to admissions that the debt is due. A new promise will not be inferred from a payment unless there is an actual, affirmative intention on the part of the debtor to make a payment upon the debt claimed to be due. There must be an intention on the part of the debtor to waive the bar of the statute. Miller v. Cinnamon, 169 Ill. 456, and cases cited.

We have examined the evidence contained in the abstract of the record to determine the fact whether the deceased had made a new promise, or made payments from which such new promise might be inferred, within five years of the filing of the claim. Aside from a mere reference by the witnesses to the account filed, and what it showed, which we think was not admitted or to be considered as evidence, there is but little testimony of witnesses having knowledge of any promise or payment made by the deceased, and such as there was, was wholly indefinite as to time, except the conversation stated by the witness Kiersey, had in 1892, more than five years before the claim was filed. Albers testified that the deceased told him the reason for not settling the account in full, that he was making a bare living out of his insurance business; that he did not have any money outside of that and could not pay, only as he could in that way. Had conversations with Hendgen in regard to his indebtedness frequently; he said the account was all right

but he could not pay anything. "I can not state that all this money was paid to me personally; more than likely to the bookkeeper."

Kiersey testified he saw deceased in October, 1892.

"Mr. Hendgen came into the office; he had a bill against us for premiums on insurance policies. He said to me: 'I owe Charlie (Mr. Albers—he always spoke of him in that way) some money and I am not able to pay it, but Mr. Albers gives me insurance. I place his insurance and will deduct from the bill ten per cent of the premiums and apply it to my credit on your account.' And I afterward did it that way. He brought in the bill and I immediately deducted ten per cent of the amount that was coming to him, and gave him a check for the difference and credited his account with the ten per cent."

It will be observed no time is stated, within the knowledge of any witness, when any of these conversations or transactions occurred, except the one in October, 1892. No witness has stated of his knowledge that within five years before the claim was filed the deceased promised to pay the claim, nor that he made a payment upon it, nor of the occurrence of any other fact from which such promise could properly be inferred. The language and expressions of the deceased were vague and indeterminate and led to no certain conclusion; did not identify the debt with certainty, nor clearly determine its character, nor fix the amount due, nor show a present unqualified willingness and intention to pay it. There is no legal evidence of such facts, and in such condition of the evidence the court might properly have given the instruction requested by appellee at the close of all the evidence directing a verdict for the defendant. No other verdict than the one that was returned would have been responsive to the evidence, and this being true, all the other errors of instructions given and refused, of which appellant makes complaint, were harmless and need no further consideration.

Finding no reversible error the judgment of the Circuit Court will be affirmed.