# In re Will of Peter Magnes, Deceased.

*County Court of Arapahoe County, Aug. 8, 1902.*

GEORGE W. ALLEN, T. E. McCLELLAN and GUY LeRoy STEVICK, for contestants.

W. F. FREEMAN, guardian *ad litem* for minors.

H. W. SPANGLER, for proponents.

LINDSEY, J.

An instrument purporting to be the will of Peter Magnes, deceased, was presented to this court for probate and record on the 23d of April, 1902. Caveats or objections to the probate of said will have been filed in this court by the widow and children of the deceased. The objections are very numerous, but for the purpose of this decision it is not necessary that they all be considered. It is sufficient to say that they not only question the testamentary capacity of the deceased and thus raise the issue *devisavit vel non*, but they also contain numerous objections which go to the legality and validity of the contents of the will. The sufficiency of the latter or second class of

objections depends almost entirely upon the effect of a certain antenuptial contract between the deceased and his wife upon the alleged will. In this respect it is claimed generally:

1. That the antenuptial contract was void, and because it is specifically made a part of the will, and all the directions and intentions of the testator expressed therein having been made in contemplation of its enforcement, it must necessarily follow, if the the contract is void, the will is void.

2. It is also insisted, that even if the antenuptial agreement was not void, that its recognition in the will as a part thereof makes it so vague, indefinite and uncertain that it would be impossible to execute the same without a change of the general scheme, plan and purpose of the testator to such a serious extent as to render impossible the execution of the purposes of the testator as expressed therein.

The antenuptial agreement provides that the widow of the testator during her lifetime should enjoy the use and occupation of the homestead then occupied by them; it further provides that she shall be entitled to the use and enjoyment of one-half of the estate during her natural life, and at her death the whole of the estate shall descend to and belong exclusively to the heirs of the testator. By the terms of the will the estate is left in trust to two trustees and executors for the benefit of all the grandchildren of the decedent living at the time of his decease, to be used for their benefit, and finally conveyed to them under the express terms and conditions set forth in the will. If the antenuptial agreement is void, the will certainly cannot be sustained. Before any of these questions can be determined, however,

some very serious and important questions concerning probate practice in this state in the admission of wills to probate in the county courts must be considered and determined. These questions may be summarized as follows, and will be considered and determined in the order named:

First. Has the court jurisdiction at this time to hear the two classes of objections made to the probate of this will?

Second. If the first question is answered in the affirmative, are the objections of contestants sufficient to invalidate the will? In this connection some important questions as to the competency of certain evidence offered must also be considered and determined. The first question has never been decided by the supreme court or the court of appeals, but some conflicting declarations by the latter court in several cases, and much misunderstanding on account thereof, justify an unusual and somewhat extended consideration thereof, and to this end we find it necessary to discuss: (a) the jurisdiction of this court; (b) the methods of probate at common law, the methods of probate under the statutes of this and other states, and something of the history of our own statute; and (c) the decisions of our own courts.

A careful investigation of the constitution and statutes of the several states in the Union will satisfactorily show that the powers of the county courts of the state of Colorado in probate matters are as broad, if not broader, than those of similar courts in any other state. The constitution declares that "county courts shall be courts of record and shall have original jurisdiction in all matters of probate, the

settlement of estates of deceased persons, appointment of guardians, conservators and administrators and settlement of their accounts, and such other civil and criminal jurisdiction as may be conferred by law." Colo. Const. Art. 6, § 23.

In our investigations, we have found no state containing statutes as broad, sweeping and mandatory as our own in defining this jurisdiction and insisting that probate courts shall hear and determine all such matters.

"All matters of probate" is an extremely comprehensive term, and must be taken in its general sense. Neither the constitution framers or the legislature could have used broader or more comprehensive language. Andrews v. Black, 43 Ill. 256; Welch v. Tobin, 107 Ill. 212.

The constitution and statutes of Illinois or California do not begin to contain as broad provisions (especially relating to probate of wills) as our own, respecting the powers of county or probate courts, nevertheless, in the matter of the Will of Bowen, 34 Cal. 682, it is declared in construing the constitution of California conferring jurisdiction upon probate courts, that:

"This is a comprehensive grant of probate jurisdiction, and as there is nothing in the article granting concurrent jurisdiction, the grant to the probate courts must be held exclusive. There may be cases involving matters peculiar to probate courts of which the district courts may have jurisdiction; but matters like the probate of a will, the granting of letters testamentary, or of administration, the allowance of claims, the settlement of the accounts of the executor or administrator, etc., were well understood at

the time of the adoption of the amendments to the constitution as falling within the probate jurisdiction. If, without any express grant, like that in the former constitution, the district courts can be vested by the statute with jurisdiction of the matters provided by § 20 of the probate act, the jurisdiction to determine every question of fact arising in the probate court may likewise be transferred to the district courts, and the probate courts left as the mere registers of the decisions of the district courts." See also opinion of Mr. Justice Myrick in Rosenberg v. Frank, 58 Cal. 418.

At common law, the term "probate" related only to the proof of wills either in "solemn form" or "common form." 2 Black. Com. 518.

The framers of the constitution and the legislature in referring to "probate matters," however, clearly include all of those proceedings in the settlement of estates of decedents, or the administration of the affairs of incompetents, which formerly, under the common law, were administered in the common law courts or the ecclesiastical courts. While our constitution (Colo. Const., Art. 6, § 11) confers upon the district court jurisdiction in all cases in equity, there is much reason to sustain the contention that such power did not and could not embrace original jurisdiction in any matter of probate. McMichael v. Skilton, 13 Pa. St. 215; Endlich, Int. of Stats. § 153; Will of Bowen, *supra*.

If this were true, the purpose and language of the constitution would be wholly inconsistent and meaningless. It would enable the legislature to take from the county courts practically every vestige of jurisdiction in probate matters, excepting the right to hear

the proof of wills. Because, as substantially every other "probate matter" thus embraced in the section of the constitution referred to was at common law an equity matter, it would seem clearly that it was not intended that the district court should have original jurisdiction in such cases, for while thus formerly known as cases in equity, nevertheless they had, at the time of the adoption of the constitution, by general custom, and by the language of the constitution itself, been specially referred to as "probate matters," and not as equity or chancery matters, and were not therefore "included in that grant of power to the district courts in the same instrument which gave such courts original jurisdiction in all cases oj equity." It may be, that because of the practice acquiesced in for many years, in permitting the district court original jurisdiction in some "probate matters," it would not now be held that such courts were entirely deprived of such original jurisdiction, so that each court may be said to have concurrent jurisdic_ tion in a limited class of matters embraced within the constitution as "probate matters." The rule is well established, however, that where there is concurrent jurisdiction in the district court and the county court, that which first takes jurisdiction shall have exclusive jurisdiction. It would seem clear, therefore, that the probate court, having the power to hear the proof a will and admit the same to probate, thereby acquired and had jurisdiction of the subject matter of the estate, and no other tribunal could take original jurisdiction of any matter concerning the administration of the estate of which the county court could in any event have jurisdiction.

It is perfectly clear that, by virtue of the broad jurisdiction conferred by the constitution (Colo. Const., Art. 6, § 22), and the statutes (1 Mills Ann. Stat. § 1054) upon the county courts, such courts have the threefold jurisdiction formerly necessary to determine all controversies testamentary. This important point is often lost sight of, and has led to much misunderstanding. They have all the jurisdiction of the ecclesiastical courts. The jurisdiction of the ecclesiastical courts was limited to the hearing in "common" or "solemn form" of the probate of wills of personalty only. If the will conveyed real estate, any contest over its execution and validity was heard in a common law court by an action in ejectment when the parties had a right to the issue *devisavit vel non* to be tried by a jury. This jurisdiction was vested in our county courts when it was provided that wills of both realty and personalty shall be probated in such courts. The ancient action in ejectment referred to was thus abolished. If there was a trust in the will to be construed, a proper action at common law must be brought in the chancery court. Our county courts in this respect now have all the power and jurisdiction formerly vested only in the chancery courts. It therefore followed that, before all the questions touching the proof of a will could be determined at common law, three jurisdictions must be resorted to, and it is perfectly conceivable that several actions might be existing at the same time in several courts to determine various questions arising out of the same instrument alleged to be a will. The history of probate practice in this country shows that it has been the constant endeavor of the people to get rid of this cumbersome system. Its

nature in this respect may be all the more accentuated by the fact that, if the will was probated in the common form in the ecclesiastical court, any party in interest had the right, within a reasonable time— held to be thirty years—within which to require the executor to inaugurate a contest or establish the will *per testes.*

It thus appears that common sense, convenience and reason support the contention that a will should be contested in the county court.

As said in the case of Broderick's Will, 21 Wall. 509: "The public interest requires that the estates of deceased persons being deprived of a master, and subject to all manner of claims, should at once devolve on a new and competent ownership."

It is true that a contest will produce delay, no matter in what court it is inaugurated. Our statute (2 Mills Ann. Stat. § 4703) has contemplated this and provided that during such contest it shall be the duty of the county court to appoint an administrator to collect pending the determination thereof. The statute does not provide in this state for a summary probate of the will in the first instance, as it originally provided in 1861. A contest had in the county court may, as it often does, settle the rights of the parties at the time of the probate, and the court has no right to presume that the parties will always appeal from the decision of the court or jury in a will contest. The statute does not provide that such contest shall be heard upon appeal to the district court. If the statute did so provide, its constitutionality might be seriously questioned, because, as is often the case, parties contesting a will in this court avail themselves of their constitutional rights to go direct from the coun-

ty court to the court of appeals or supreme court, as was done in the case of Brown v. Scherrer, 5 Colo. App. 255; 21 Colo. 481.

Again, it is well settled that "the right and jurisdiction of an appellate court to pass upon the questions involved in the court below, is limited to that of the court of original jurisdiction." Rockwell v. Castroni, 6 Colo. App. 531; Thornily v. Pierce, 10 Colo. 250; Hummel v. Moore, 25 Fed. 381; Ramer v. Smith, 4 Colo. App. 437.

Again, there is no reason for such a proceeding. Will it be said that this court with its broad and unlimited jurisdiction in probate matters must sit idly by and suspend its functions in an estate matter and arrest all of its proceedings until it can receive the advice of another court? It is true that such might be the case if an appeal was taken to the district court, but this is only a statutory remedy, and in no wise impairs the question of jurisdiction here considered.

The view here expressed of the general jurisdiction of the county court is sustained by the supreme court and the court of appeals.

As was declared by our supreme court: "Whatever may be the law in England or in other states of the union, we are clearly of the opinion that, under our constitution and statutes, the county court, in all matters pertaining to probate business, has as ample powers and as full jurisdiction with respect thereto as have the district courts of this state over matters within their jurisdiction. Colo. Const. Art. 6, § 23, 1 Mills Ann. Stat. § 1054" Clemes v. Fox, 25 Colo. 45. It was also said by our court of appeals, in Mitchell v. Hughes, 3 Colo. App. 47: "According to our consti-

tution and the statutes which have been enacted to carry out its provisions, county courts are courts of probate, fully clothed with original jurisdiction to hear and determine all this class (probate) of controversies, and to proceed to such final determination as shall settle the rights and interests of all parties concerned."

The county courts in probate matters have all general common law and chancery powers. Thompson v. Crocker, 18 Colo. 328; Wyman v. Felker, 18 Colo. 387; Lusk v. Kershow, 17 Colo. 486; People v. County Court, 3 Colo. App. 426.

The statute (2 Mills Ann. Stat. §§ 4791-4798) expressly provides that the county courts have exclusive jurisdiction of the accounts of executors and administrators, and of the final distribution of the estates of decedents. The determination of any controversy concerning a will, whether it relates to its execution or its contents when once proven, would seem to be absoultely necessary for the purpose of determining finally the persons to whom and the proportions in which the residue of the estate should be distributed. The right to hear the issue *devisavit vel non* was inherent in the ecclesiastical courts as to wills of personal property, and seems unquestionably a part of the right and jurisdiction of every probate or surrogate court in the United States, except possibly under the system, as it existed in Illinois prior to recent years when it was repealed in that state. So that to say the county court cannot hear every question relating to the execution and validity of a will ordinarily embraced in the issue *devisavit vel non* is to deprive it of jurisdiction conceded to all other probate courts, most of which in the different

states in the union have concededly no such broad and general powers as those conferred upon the county courts of this state by the constitution and the statutes.

It is true, that such a conclusion seems to be intimated in the case of Clough v. Clough, 10 Colo. App. 433. Conceding that it is, however, this court is perfectly safe in regarding it as *obiter dicta* since the question was in no sense there involved, as determined in the same case on appeal to the supreme court. 27 Colo. 97. The court was led into error, no doubt, by the failure of counsel to argue the question, as it is expressly declared in that case that our statutes, in so far as they bear upon the question of rights of parties in a proceeding to probate a will in the county court, are now substantially the same as they have existed in Illinois since 1845. The learned court will no doubt at the first opportunity, when the matter is argued and actually involved, clear up any misunderstanding which has arisen respecting this case. Many of our own statutes and decisions of our appellate courts herein cited, were not even called to the attention of the court in that case. The same erroneous dictum was repeated in D'Avignon's Will. 12 Colo. App. 489.

In order to understand the effect of our statutes and the change that was made in our original law in 1861, which was copied from the Illinois act of 1845, it will be necessary to consider briefly; first, the method of probate existing at common law, known as the "common form" and the "solenm form;" and second, the history of our statute and the material changes made therein.

The method of probating wills in the ecclesiastical

courts of England was known either as the "solemn form" or the "common form." The difference was well understood. In the proof of wills in the common form, both in England and in this country, no notice to those opposed to the will was given, and no one could object to the proof and probate when this form was adopted by the executor. It was in the discretion of the executor to adopt the solemn form, which consisted in issuing notice or summons to all parties interested to appear at the probate of the will. If the solemn form method was pursued, the persons in interest summoned and appearing had a right to raise the issue *devisavit vel non*, which might be tried to a jury. In such cases probate was forever binding on all the parties summoned and appearing. If the proceeding was in the common form any one interested might within thirty years cite the executor to make proof of the will in the solemn form or *per testes*. 1 Williams, Executors, 371-385; Schouler, Executors, § 66 *et seq*; 3 Redfield, Wills, *36-*38; 1 Jarman, Wills, 49, 50; Luther v. Luther, 122 Ill. 559; 1 Woerner's American Law of Administration, 468-472; Marcy v. Marcy, 6 Met.367; Brown v. Anderson, 13 Ga. 171; Townsend v. Townsend, 60 Mo. 246; Odell v. Rogers, 44 Wis. 146; Wells v. Spraggins, 3 Gratt. (Va.) 529; Spencer v. Moore, 4 Call. (Va.) 427; Case of Wells' Will, 5 Litt. (Ky.) 273; Dale v. Hayes, 14 B. Mon. 256; Hughey v. Sidwell's Heirs, 18 B. Mon. 259.

The Illinois statute had its origin in Virginia; Kentucky copied it from Virginia; Illinois from Kentucky; Colorado, Kansas and Missouri copied it from Illinois. Luther v. Luther, 122 Ill. 564; Rigg v. Wilton, 13 Ill. 19. Many changes have been made, how-

ever, and·the effect of the statute, as to proof of
wills, as compared with that of Illinois, is as different
as it is possible to make a difference in cases of pro-
bate. In this state the proceeding is in the "solemn
form." In Illinois, in the county court, it was, until
changed, in the "common form." The trouble in Illi-
nois was that the proceedings in the probate or coun-
ty court was without any substantial reason, in our
opinion, limited to the common form, and in no event
could there be a contest on any issue in the county
court, excepting that set out in § 2 of their act, which
will be found in 2 Mills Ann. Stat. § 4670. It was
expressly held that, even though parties interested
appeared in the county court, they could, notwith-
standing such appearance, afterwards contest the
will by a bill in chancery, as provided for in § 7 of
the laws of Illinois, which was as found substantially
in 2 Mills Ann. Stat. § 4679, with the material
changes or limitations, however, which we shall point
out. Heirs of Critz v. Pierce, 106 Ill. 167; North's
Probate Practice, ch. 13, § 182.

It will serve no purpose in this case to enter into a
discussion of the question, but it may be said in pass-
ing that limiting the probate in the county courts in
the manner in which it was limited in Illinois to the
"common form" grew out of a misapprehension in
some early decisions of the difference in the com-
mon and solemn form of probate and the meaning
and effect of the statutes of Virginia and Kentucky.
Andrews v. Black, 43 Ill. 256; North's Prob. Prac.
(Ill.), § 153; Horner's Prob. Law (Ill.), § 53; Luther
v. Luther, 122 Ill. 559; Rigg v. Wilton, 13 Ill. 19.

It was positively declared in one case in Illinois
that under the statutes of 1845 parties in interest

could contest every question in the probate court that they could contest in the chancery court. Duncan v. Duncan, 23 Ill. 364.

This was the law in Kentucky, from whence Illinois copied the statute. In that state if no notice or summons were issued to the parties in interest and if they did not appear the will was presented by the executor and admitted to probate upon complying with those formalities found in 2 Mills Ann. Stat. § 4670, requiring that even at such summary hearing it should at least appear from the testimony of the attesting witnesses that there was no proof of fraud or other improper influence. If any of these things thus appeared in the proceeding in that jurisdiction, or in the ancient ecclesiastical courts when presented in this summary way the will could not be admitted to probate, but it became the duty of the court to issue summons to parties in interest and have the proceeding in "solemn form." It is this idea that 2 Mills Ann. Stat. § 4670 intended to carry out as in the common form of probate. In Kentucky, however, as in the ecclesiastical courts in England, if the parties were summoned to appear, or did appear of their own motion, as they had the right to, all of the issues involved in the issue *devasavit vel non* (which included that of testamentary capacity, although not included in said § 4670 in this state or the corresponding sections in Kentucky) were all heard and determined in the probate court and finally and forever settled there as to such parties appearing, unless an appeal was taken to the circuit court. The difference between the constructions given the statute by the respective states of Kentucky and Illinois in this respect was that as pointed out Illinois held

that even an appearance of the contestant in the probate court determined nothing finally, and if his contest was there heard and determined against him. his right to the bill in equity provided for still existed. It thus follows clearly that under the same statutes and system in Kentucky the proceeding could be had in "solemn form" in the probate court, as in the ecclesiastical courts, by simply issuing notice or summons as was done in the latter courts, even though the statute did not require it. It equally follows that the change made in our laws of 1868 and 1877 from those of 1861, consisted, without possible question, in simply making the original probate in "solemn form" mandatory by requiring citations to parties in interest (limited by error in the statute to the heirs, but the county court because of its inherent powers formerly held by the ecclesiastical and chancery courts unquestionably has the right to cite "all the parties," devisees and heirs) and forbidding the court to proceed to proof of the will and hearing of objections as to execution and contents until they were duly served. Prior to this change the proceeding in the "solemn form" was limited to the contingency as to whether the court did or did not for any reason appearing issue this notice, or whether some one in interest voluntarily appeared to inaugurate a contest as they had a right to do. As to whether the statute went further by the change in 1868 and 1877 and permitted contestants the further and additional right to raise objections to the contents of the will (which was not included in the right to raise the issue *devasavit vel non*, all that was contemplated by the "solemn form" proceeding) remains to be determined.

That we are clearly justified in what has just preceded, we quote the following language from the supreme court of Kentucky in construing their statute:

"The plaintiff, although he refers to the will and probate, the record of which shows that he appeared and contested the will in the county court, passes by in silence his attitude in the litigation which had taken place, and of course does not suggest that he had full opportunity in that litigation to present every fact upon which he now relies for sustaining his opposition, nor does he suggest that he did not in fact present, as fully as he is now able to do, every consideration of fact and law which could, in his opinion, tend to invalidate the will.

"But it is contended that under the 11th section of the act of 1797, concerning wills, etc., (Stat. 1543) remedy by bill in chancery to contest the validity of a will admitted to probate in the county court is given to any person interested, without regard to the part he may have taken in the proceeding for probate of the will. That section providing for the immediate proof in the county court, without regard to parties, proceeds thus: 'If, however, any person interested shall, within seven years afterwards, appear and by his bill in chancery contest the validity of the will, etc.'

"This question, as now presented in this case must now be decided, and although we might not regard the mere language of the 11th section as precluding a party who had opposed the will in the county court from afterwards contesting it by bill in chancery, still the language implies that the legislature was looking to a party who had not previously ap-

peared as a contestant; and when in addition to this inference from the language of the act, we recur to the general principles of expediency and justice before referred to, and of which it cannot be supposed that the legislature ever loses sight of in the regulation of judicial proceedings, we think the 11th section of the act of 1797 may be construed as extending the remedy by bill in chancery to whose persons only who had not, by appearing in the ordinary proceedings for probate, and there contesting the will, placed themselves in condition to be bound by the decision of the contest which they had voluntarily made." Dale v. Hays, 14 B. Mon. (Ky.) 256.

It follows that even if we were now operating under the laws of 1861 the dictum of the court of appeals in Clough v. Clough would be erroneous, because:

"It is well settled that where the origin of a statute is traced to two states and there is a difference in its construction by such states, the court wherein its interpretation is of first impression is free to adopt that which it considers the most reasonable construction and under such circumstances will generally follow that interpretation given the statute or practice by the state from which it was originally borrowed." Whitney v. Fox. 17 S. Ct. 713.

And, again, especially should this be true in this instance since as the supreme court of Illinois subsequently admitted, the error and misunderstanding originally existed in that state which led to the erroneous construction, and there are other authorities in that state construing the statute as in Kentucky, as we have already pointed out. Andrew v.

Black, supra; Duncan v. Duncan, supra; Rigg v. Wilton, supra.

And as said by our own supreme court:

"The judicial construction given the statute of another state at the time of its adoption by this state is not binding on the courts of this state, when such construction is clearly erroneous, or is inconsistent with the spirit and policy of the law of the state." A. T. & S. F. Ry. Co. v. Farron, 6 Colo. 498-507; Treasurer v. Engelbrecht, 3 Colo. 385.

As to the construction of the statute in both Virginia and Kentucky, see: Dale v. Hayes, 14 B. Mon. (Ky. 256); Wells v. Wells, 4 Mon. (Ky.) 152; Wills v. Spraggins, 3 Grat. (Va.) 543; Spencer v. More, 4 Call. (Va.) 427; Ballow v. Hudson, 13 Gratt. (Va.) 672; Hughey v. Sidewells' Heirs, 18 B. Mon. 260.

We copied the original Illinois laws relating to the probate of wills from their general statutes of 1845, the wording and numbering of the sections seeming to be identical. A number of changes were made prior to 1868, not necessary here to refer to. In 1868 the legislature abolished the common or summary form of probate adopted from Illinois, and positively decided that the proceeding should be in the solemn form. The change is particularly significant because of the matters hereinbefore referred to. It was accomplished by adding four new sections to the statute and materially changing the phraseology of several others. The sections added are now known as 2 Mills Ann. Stat. §§ 4665-4668, requiring that citations shall be issued to all the heirs, and that a guardian *ad litem* shall be appointed for infant heirs, and that the court may proceed to hear the probate of the will only in case "it shall appear that such

citation has been served on the persons named therein," etc. A change was made in that section now known as 2 Mills Ann. Stat. § 4679. The first portion of this section in Illinois, and in 1861 in this state was numbered section 6, and read as follows:

"When any will, testament or codicil shall be exhibited in the county court for probate thereof, as aforesaid, it shall be the duty of the court to receive probate of the same without delay, and to grant letters testamentary thereon to the person or persons entitled; and to do all other needful acts to enable the parties concerned to make settlement of the estate at as early a date as shall be consistent with the rights of the respective persons interested therein. Provided, however, that if any person shall within three years after the probate of such will, testament or codicil, in the county court as aforesaid, appear and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up, whether the writing produced be the will of the testator or testatrix or not;" etc.

The remainder of this section is substantially the same as the remainder of 2 Mills Ann. Stat. § 4679, as it now stands after the change made in the portion thereof, which may be noted by reading the same section as changed and amended in 1868, which is as follows:

"In all actions wherein the execution or contents of any last will may be brought in question, the records of the probate of such will, or an exemplified copy of such record, shall be conclusive proof of the execution and contents thereof, both as to the persons to summoned and appearing at the probate there of and as against all other persons: Provided; That any

heir at law or other person interested to contest the said will who was not summoned by actual service of process and who did not appear at the probate of such will, may at any time within two years after the admitting of such will to probate appear and by his or her bill in equity in the district court of the county wherein such will was admitted to probate, or of the county to which such will is attached for judicial purposes, contest the validity of such will; and thereupon an issue at law shall be directed, whether the writing in question be the last will of the testator or testatrix or not, which issue shall be tried by a jury according to the practice in courts of chancery in similar cases; but if no such person shall appear within the time aforesaid, the probate as aforesaid shall be forever binding and conclusive on all the parties concerned, saving to infants, *femmes covert*, persons absent from the state, or *non compos-mentis*, the like period after removal of their respective disabilities, and in all such trial by jury as aforesaid, the recorded testimony of the witnesses examined at the probate of such will may be used as evidence and have such weight as the jury shall think it may deserve."

2 Mills Ann. Stat. § 4681, which was originally in 1861, and in Illinois in 1845, Sec. 13, was changed so as to provide:

"When any last will shall have been admitted to probate, or probate thereof shall have been refused and appeal shall be taken," etc., "it shall be lawful for the party seeking to have the will admitted to probate to support the same on trial of the appeal by any evidence which would be competent in case probate of the will had been allowed," etc.

The original section in Illinois, and in 1861 in this state, simply provides what the rule of evidence should be in case of an appeal where the probate had been refused by the court. The purpose of this was originally to enable the proponents, in case the will was refused to have their right of contest in the district court, as they had no such right by a bill in chancery given to the contestants. North's Probate Practice § 153; Horner's Probate Law § 53; In re D'Avignon's Will, 12 Colo. App. 489.

It thus appears clearly that 2 Mills Ann. Stat. § 4681 is now entirely unnecessary and superfluous, since the solemn form of probate has been adopted in the county courts at the time the will is presented. The legislature by inserting the words "admitted to probate" in this section and making the changes pointed out in section 4679 (2 Mills Ann. Stat. § 4679) further accentuated the change to the solemn form and amended the section to be consistent with it when they might have eliminated it entirely, since regardless of it, because of the change referred to, both parties have the right to contest in the county court originally, and in the district court on appeal, and the contestants summoned and appearing had no right, as the proponent had no right, to a bill in chancery originally provided for for all persons in interest excepting the proponent, but now limited only to those who were not summoned to the probate in the first instance.

Mills Ann. Stat. § 1097 provides as follows:

"All questions of law and of fact, relating to probate matters in any county, shall be determined by the county court of such county, and from any and all such decisions upon such questions appeals or

writs of certiorari shall lie to the district court of the same county," etc.

This law has been upon the statute books since the adoption of the constitution.

Again, since all rights of contestants were originally to be determined in the district court by the bill in chancery now provided for in the proviso portion of Mills Ann. Stat. § 4679 to persons only not summoned, it may be well to observe what those rights were in the district courts in Illinois and Colorado in such a proceeding. It has already been pointed out why they are not limited in this state to the issue of *devasavit vel non*, even if they were so limited originally, or if they were so limited in Illinois. For if such probate is to be "binding and conclusive in all actions," it certainly embraces every conceivable action.

But it was held in Illinois, that in the action provided for in the circuit court by persons desiring to contest the will, that the court had "the power not only to try and determine whether the writing in question is the will of the testator or not, but also the power to adjudge upon the validity of any portion of the instrument as well as upon the whole." Horner's Probate Law. 71; Wolfe v. Ballinger, 62 Ill. 371; Rigg v. Wilton, 13 Ill. 15.

Therefore, even without the additional sections of our own statutes (Mills Ann. Stat. §§ 1107 and 1097) requiring parties to contest in the county court, which sections in 1877 did not exist in Illinois, in confining ourselves to the changes alone found in the statute of wills, if the rights thus given by the bill in chancery in the circuit court were transferred to the county court by the "solemn form" of proceedings

provided for, it necessarily follows that such rights must be as broad as those given in the first instance and include the right at the probate, as declared by the supreme court of Illinois to "also pass upon the validity of any portion of the instrument as well as the whole."

What is known as Mills Ann. Stat. § 4670, which seems to have been the cause of considerable misunderstanding, is really, when considered in connection with all of our statutes in the light of its history, of no substantial difficulty. In the revision of 1868 and 1877 it might have been eliminated entirely, but having been left in the statute it can be given a meaning, and must, as will hereafter be shown, be given that meaning which under the rules of statutory construction will not conflict with the clear purpose and effect of the entire act as it would if it should serve the purpose to prevent the contest of the will in the county court upon the issues *devisavit vel non*. The section is as follows:

4670. "If upon the hearing of such proof it shall satisfactorily appear by the testimony of two or more of the subscribing witnesses to said will, that they were present and saw the testator sign such will, and attested the same at his request, or that he acknowledged the same to be his last will, and that they believed the testator to be of sound mind, at the time of signing and acknowledging the same, the court shall admit the same to probate and record; *provided*, that no proof of fraud, compulsion or other improper conduct be exhibited which, in the opinion of the court, shall be deemed sufficient to invalidate or destroy the same, and every will, testament or codicil, when thus proven, shall be recorded by the

clerk of the county court in a book to be provided by him for that purpose and shall be good and available in law for the granting, conveying and assuring of lands, tenements and hereditaments, annuities rents, goods and chattels therein and thereby given, granted and bequeathed."

This section is a part of the original section 2 of the Illinois act. This original section 2 provides for the mode of the execution of wills; the first part of the section being practically identical with what is known as Mills Ann. Stat. § 4653 as they now stand. Then follows, as a second paragraph, that part of the act which is now Mills Ann. Stat. § 4670. In our original act of 1861 the above section was copied verbatim from Illinois, and even numbered section 2 (Laws of Colorado 1861, p. 398), the entire section being then what is now our two sections Mills Ann. Stat. §§ 4653 and 4670. It would in our opinion be contrary to all elementary rules of statutory construction to declare that our statute of wills (so elaborately framed and so deliberately departed from in the revision thereof in order to change the proceedings to the "solemn form") must still retain all the narrow features of the "common form" of probate on account of this one section in the entire act.

This section is given sufficient effect by now being taken as simply directory, in view of the entire act, and construed in *pari materia*, that the oourt shall not admit a will to probate in any event, even though there be no contest inaugurated, unless the evidence of the attesting witnesses shall comply with the formalities mentioned, namely, that there was no fraud. If any court should insist upon giving it the greater effect of making the probate a summary proceeding

in the county court and denying the parties seeking to contest, the right to offer testimony impeaching the validity of the will for want of testamentary capacity, etc., by the testator, etc., as claimed to have been held in Clough v. Clough, *supra*, it would in our opinion be contrary, not only to the rules of construction as pointed out, but would deny the effects of that portion of our statutes (Mills Ann. Stat. §§ 1097, 1107 and 1109) contained in the chapter on "Courts of Record," which would certainly have the effect of repealing Mills Ann. Stat. § 4670 entirely if such construction be insisted upon. Section 25 of the general statutes of 1877, now known as Mills Ann. Stat. § 1109, provides:

"That chapter 71 of the revised statutes of Colorado territory, and all other laws enacted since the first day of January, 1869, by the legislature of the territory of Colorado relating to jurisdiction, powers, proceedings or practice of probate courts, and all other laws or parts of laws inconsistent herewith are hereby repealed. * * * Provided that. nothing herein contained shall be held to repeal any portion of the existing laws relative to wills, executors or administrators, except so far as the same shall be in conflict with this act."

Mills Ann. Stat. § 1107 provides:

"The county judges in their respective counties shall have jurisdiction and authority to hear and determine all causes, matters and controversies testamentary which shall be brought before them, touching the proof of wills, testaments and codicils, and may grant probate thereof; and shall hear and determine the right of administration of persons dying intestate, and do all other things, touching the grant-

ing of letters testamentary, and of administration, and the settling of estates."

This section, so far as it is applicable to county judges and county courts, as defined under the constitution of the state, first appears in the general statutes of 1877. As heretofore shown, section 4670 was first adopted in 1861 as a part of the "common form" of probate existing in Illinois. No construction, therefore, can be given § 4670. which, in any event, would conflict with the other sections of the statute heretofore pointed out. Under the rule of statutory construction, we must give every word contained in § 1107 effect if possible. We therefore have in this section positive jurisdiction (if the constitution did not already cover it, as it does,) conferred upon the county courts "to hear and determine all causes, matters and controversies testamentary which shall be brought before them touching the proof of wills, testaments and codicils, and may grant probate thereof, and do all other things touching the granting of letters testamentary and of administration and the settlement of estates."

Nothing is more necessary to the settlement of estates than the disposition and determination of all causes testamentary. The books define "testamentary" as "connected with, relating or belonging to the making of a will or of a will as made." Anderson's Law Dic. 1026. "Touching" means to relate to, to concern, to affect." To prove (or proof of) a will of course means "to probate a will."

The section may therefore be fairly said to confer upon the court jurisdiction and authority to hear and determine all "causes testamentary" or "causes con-

nected with the making of a will or a will as made."
Most any controversy of law or fact affecting the exe-
cution or the contents of a will may be fairly said to
concern or relate to its probate, for if the contents
of the will are declared void, the probate of the will
would be to that extent revoked, for the statute
(Mills Ann. Stat. § 4679) expressly declares: "that
in all actions (certainly embracing equity or law
actions) wherein the execution or contents of any
last will, etc., may be brought in question, the record
of the probate * * * shall be conclusive proof of
the execution and contents thereof." The statute
does not say in "any action" or "in the actions men-
tioned," in the same section of the statute contained
in the proviso, which refers only to one action
therein specifically stated and pointed out, namely
the issue *devisavit vel non*, which ordinarily compre-
hended questions relating only to the due and valid
execution of the will.

We are candid to say, that but for the express pro-
visions of our statute no other question or issue could
be raised at such probate excepting the questions em-
braced in the issue *devisavit vel non*. Such is the
general rule. A document alleged to be a will must
first be declared or proved a will before any one can
question its contents or ask for a construction
thereof, or claim that the will when proved is void.
It therefore follows that there are two well settled
and distinct classes of objections to a will, which
must be clearly differentiated, and kept in mind.

1st: Those raised in the issue *devisavit vel non*,
which to illustrate, permits us to inquire at the pro-
bate; was the instrument the result of undue influ-
ence? Did the deceased have testamentary capacity

at the time of making the alleged will? And any other proper question relating solely to its execution and validity as a will. 2nd: Conceding it as a will, can the directions and intentions of the testator be executed? Do they violate any rule of public policy, as, for instance, the rule against perpetuities? Are the trusts therein contained void? Are they uncertain and indefinite?

We are of the opinion, however, that subject to certain limitations, the comprehensive and unusual provisions of our statute already pointed out, combined with the threefold jurisdiction of the court, clearly indicate that even at the application to probate the will both classes of objections may be heard and determined, although it may be conceded that in all jurisdictions to our knowledge, only the first class can be heard at the probate, while the probate court in many jurisdictions, and certainly in this jurisdiction, may after the probate, hear the second class of objections. The second class, however, we think must be limited to those questions which can be determined at the time of the probate, as by the rules of statutory construction the legislature never intended impossibilities, and where a will is presented for probate, and the contents thereof are of such a nature that the happening of contingent or subsequent events may or may not affect the same, the court could certainly not at the probate finally determine objections of this character, and it could not have been intended by the legislature that the probate could "in all actions where its contents were brought in question," be considered as conclusive thereof, if at the time of the probate the conditions or contingencies were such that the validity of the

contents in such respect could not possibly be passed
upon. The court could have no jurisdiction at such
time to hear questions which did not then exist.

But the legislature, by the change in our statutes
pointed out, certainly contemplated something more
than to permit the first class of objections, or we
must admit there is much phraseology in the statute
that is meaningless, and thus violate well-settled rules
of statutory construction. The intention clearly was
to avoid extended litigation in various courts and a
multiplicity of actions as hereafter pointed out, and
under every rule of construction this purpose must
be permitted the statute as far as possible.

See Sedgwick, Const. of Statutes, 195, 198 and 200;
Symons v. Powder Co., 7 Colo. 285.

"In determining either what was the general ob-
ject of the legislature or the meaning of its language
in any particular passage, it is obvious that the in-
tention which appears most agreeable to conven-
ience, reason and justice, should in all cases open to
doubt be presumed to be the true one." Endlich,
Int. of Stats., §§ 245, 251.

What is convenient, etc., may be best ascertained
in determining the jurisdiction of this court in such
matters as here considered. Why did the ecclesias-
tical courts refuse to pass upon many of these ques-
tions? Because they had no jurisdiction. Did the
questions exist at the time of probate; were the par-
ties before it, and had it jurisdiction; is there any
good reason from the standpoint of convenience,
reason or justice why they should not be heard?
Why were courts of equity unable to hear the issue
*devisavit vel non?* They had no jurisdiction. Why was
the action in ejectment to determine the title to real

estate under the will brought in the common law court? Because it alone had jurisdiction. What was the object of the law reform begun in Virginia in empowering courts of probate to hear questions which formerly could only be heard in common law courts? In order to simplify the proceeding, avoid multiplicity of actions and settle the matters of deceased persons, which might under the old practice be unsettled for thirty years. The different states have gradually reduced the time from fifteen years to two years, and this state has abolished the limitation altogether except as to persons not summoned, and England has copied much of our probate system because of its many advantages. It is the one case where England has borrowed from us, as appears from her acts of Parliament of 1857. Then how is "convenience, reason or justice" subserved in denying a court, which concededly has all the jurisdiction necessary to pass upon a question which has actually arisen and exists as much now as it ever will exist, the right to pass upon all of these questions at this time when the parties are all before it in obedience to the positive mandate of the statute? Concededly, none whatever. The rights of all the parties are amply and sufficiently protected by this court, and they have every opportunity to present every possible question of law and of fact at this time which could possibly be had at any other time or in any other proceeding. No right or jurisdiction is infringed or invaded—the parties are all here; the machinery is here. In the face of the jurisdiction of the court and our statutes, it seems to us as palpably absurd, and as contravening the spirit of our code, the spirit of our statutes, the rules of statutory con-

struction and the general policy of the law to hold that the only power of this court at this time is, in a summary way, to admit this will to probate and record if anyone is here to raise either of the two classes of objections referred to. Let us suppose, however, that such is the law, and follow the results. The will is now admitted to probate and record in a summary manner, notwithstanding the statute has made it mandatory that the court shall summon all the parties in interest to this hearing, and that the statute has further positively declared that the hearing shall be conclusive in all questions of law or fact as to the execution and contents of this will, but presuming that these statutes do not mean what they say, and the court has not the broad jurisdiction the supreme court has declared it has, and that the constitution confers upon it, what would be the results? The will is admitted to probate, the contestants appeal to the district court and there have their contest upon the one issue *devisavit vel non:* did the testator have testamentary capacity? etc. It is tried before a jury and the will admitted to probate in the district court. The county court is duly apprised of that fact, and an order is entered admitting the will to probate and record and discharging the administrator to collect pending the contest. A suit is then brought in the district court to question the contents of the will for the reasons already stated in the second class of objections now on file. In such action, the contents are held absolutely void, and the decree is filed in the county court, the effect of which is to revoke the probate. This seems to us, in view of what has been pointed out, a senseless, inconvenient, unreasonable and unnecessary proceeding,

which the statute was positively designed to avoid.

It is said that such powers should not be conceded to county courts, because in some counties the judges thereof may not be capable of properly determining such questions. The answer to this is, they have as admittedly important powers and responsibilities in other respects and again that at the time the system was adopted the right of appeal was given to the district court, where trial *de novo* could be had when the statute expressly declares the parties have all the rights in that court they would have had had the case been originally brought there. Clough v. Clough, 27 Colo. 97.

It is likewise urged, that no system of pleadings are provided for, and no method pointed out by which the proceedings shall be conducted. This objection is only raised by those who have become so completely habituated to the directions of the code of civil procedure that they constantly expect to be guided and directed in every other proceeding as to each step therein. It might as well be said that an action in ejectment, or a suit to remove cloud from title could not be brought if the legislature had failed to point out how the pleadings should be made and the issues joined. It is only in recent years that any directions have been given as to how pleadings should be framed in will contests in any of the states. The issue as to the first class of objections, (*devisavit vel non*) was a very simple affair at common law. The will was presented and a caveat or form of objections filed thereto. These objections raised the questions of undue influence, testamentary capacity, etc. The form of objections may be simply enlarged as has been the custom for years in this court, by in-

cluding therein other objections to the validity of the contents of the will. The first issue to be determined would be that raised by the first class of objections. Is the document presented a will? If declared by the court or jury to be a will, before it is admitted to probate, the court and not the jury, would then determine the objections to its contents, and if its contents be against public policy, or for any other reason void, the instrument may be denied probate. If part of it is void and part valid, that portion which is valid could be admitted to probate, and the portion invalid denied probate. If a will is admitted to probate in the county court, and subsequently on a bill in equity in the district court or county court to construe a trust in said will such trust be declared void, the effect is that the probate of the will is to that extent revoked and the county court would be compelled to so consider it, and the estate would be administered partly testate and partly intestate. If this is to be the result, there is no reasonable objection in our opinion why it should not, if all the facts then exist, be determined at the probate and not postponed for an indefinite and uncertain period.

The only state, so far as our investigation goes, having enacted a statute giving to surrogates powers at the time of probate such as are covered by our own is the state of New York. Laws of N. Y. Chap. 359 § 11 (1870). This law is as follows:

"In any proceeding before the said surrogate to prove the last will and testament of any deceased person, as a will of real or personal estate, or of both real and personal estate, in case the validity of the dispositions contained in said will is contested, or

their construction or legal effect called in question by any of the heirs or next of kin of the deceased or any legatee or devisee named in the will, the surrogate shall have the same power and jurisdiction as is now vested in and exercised by the supreme court to pass upon and determine the true construction, validity and legal effect thereof; he shall enter in his minutes any decision he may make, in relation thereto and any heir or next of kin of the deceased, or any of such legatees or devisees, may appeal therefrom, in the same manner and with the same effect in every respect as is now provided by law, in relation to appeals from decisions of surrogates admitting wills to probate or refusing the same." Laws of N. Y. Chap. 359 §11 (1870); Benson v. Manhattan Ry. Co., 14 App. Div. Rep. N. Y. 442-445 (1897).

Our own statutes, taken altogether are, in our opinion, more sweeping in their scope and purpose because our county court is a creature of the constitution, while the surrogate court in New York is a statutory court as investigation will show, not vested with, or recognized as having the jurisdiction conceded to this court.

In the case of Danser v. Jeremiah, 3 Redfield's Surrogate Reports (N. Y.) 130 to 139 (decided 1876 under this statute) the surrogate, after able argument, in a very elaborate opinion declared that it would have been an official dereliction for the court to have refused to exercise the jurisdiction by law thus conferred upon it, to pass upon the legal validity of the contents of the will, and said further, that "it would be absurd to refer the parties to another forum." The court further declared that the law was a wise and senisble provision, intended to

dispense with the cumbrous and numerous suits which might have been necessitated by the old common law procedure, and that it would be contrary to the spirit and intention manifested by the legislature in the act for the court to permit the parties to resort to a multiplicity of suits to determine controversies which existed and the court had the jurisdiction and machinery to determine at the time of probate.

In Bevan v. Cooper, 72 N. Y. 317, the court of appeals of that state, in referring to this act, declared that it gave to the surrogate of the county, in any proceeding before him to probate a will, the same jurisdiction to determine its validity and construction as was vested in the supreme court, and that its power applied only and was expressly restricted to the original proceeding to prove the will. It was specifically held, that after the will had been once probated, it was too late to raise questions as to its validity, either as to execution or contents, but that they must be raised and determined at the time the will was offered for probate.

See also Benson v. The Manhattan Ry. Co., 14 App. Div. Reports, 444; Will of J. A. Ellis, 1 Connolly's Surrogate Reps. (N. Y.), 206. And as to the very limited jurisdiction of the New York surrogates, see Hamilton's Will, 27 N. Y. S. 816; Schrader's Will, 17 N. Y. S. 273.

In the supreme court of our own state, only two cases have been determined in which the effect of the probate of a will upon the validity of its contents and conclusiveness thereof has been argued and discussed. These cases are: Chilcott v. Hart, 23 Colo. 40; Clayton v. Hallett, 29 Colo. (recently decided by the supreme court and not yet reported.)

In the court of appeals only one case has involved the question, Mitchell v. Hughes, 3 Colo. App. 43.

In Chilcott v. Hart, *supra*, the heirs of the testator contended that the will consisted of one entire trust, the effect of which was to violate the common law rule against perpetuities, and was therefore absolutely void, and asked that the probate of the will for such reason be revoked. The action was commenced under Mills Ann. Code § 255, to remove cloud from the title claimed to be vested, but for such will, in the children and heirs of the testator. The supreme court finally determined that the action did not lie under this section of the code, because the plaintiffs were not in possession as required by the code. It refused to pass upon the question as to whether or not the probate of the will was conclusive as to the validity of the devises constituting its contents. It was unnecessary to do so on account of the conclusions there reached. It is significant, however, that in the first opinion handed down by the court in this case, the following language occurred:

"Our conclusion is, that in this state the effect of the probate of a will is conclusive, not only as to the testamentary capacity of the testator, and due execution, but also as to the validity of the devises, and as to all other matters affecting its validity, until the decree of probate has been appealed from or revoked by an appellate court in the manner pointed out by the laws of the state."

Upon rehearing, as expressly stated, because the question was unnecessary to determine, this part of the opinion was eliminated, and it would not here be referred to but for the circumstances which follow and the remarks of the court in the subsequent case

of Clayton v. Hallett, *supra*. In this case, the same question was again raised, but because of the point upon which the case was decided it was again not necessary to determine, but notwithstanding which the court used the following language:

"We shall not dwell upon the objection made, that the county court was the proper tribunal in which to bring this action, and that the plaintiff, by not contesting in the county court, waived his right to question the valididity of the will or any of the devises in any other proceeding, because we are not required to pass upon these questions in order to determine this controversy. We should perhaps suggest that the statute makes the probate of a will in this state a solemn form proceeding, and that it appears to invest the county court with jurisdiction to determine all questions of law and fact relating to the proof of wills in matters testamentary."

The significant fact in connection with this case is, that the learned author of the opinion in Chilcott v. Hart participated in the decision, and the learned author of the opinion just quoted was judge of this court at the time of the presentation for probate of the will of George Tritch, deceased. This will was contested in this court, not only as to its execution, but also as to its contents, and the language referred to in the first opinion in Chilcott v. Hart, and the learned arguments in relation thereto on rehearing were produced in this court at the argument in the Tritch case, and after a most painstaking, elaborate and extended controversy over this question, and careful consideration thereof by the learned judge referred to, it was held by him, that under the statute referred to, and for the reasons herein pointed

out, both classes of objections, whether concerning questions of law or fact, contents or execution, could be heard and determined in this court at the time of probate, and they were heard and determined in that case, and the will refused probate because its contents violated the rule against perpetuities and rendered the entire instrument void, even though it might be conceded it was valid as to execution and as to all questions involved in the first class of objections pertaining to the issue *devisavit vel non*. From this decision, no appeal was ever taken.

In the case of Brown v. Scherrer, *supra*, objections to the probate of a will because of its invalidity as a matter of law, admitting it was properly executed, were heard at the probate in this court, and while an appeal was taken on other grounds direct to the court of appeals, and subsequently to the supreme court and the findings of this court affirmed in both appeals, no question was raised as to the propriety of the proceeding under our statutes. The proceeding was, in effect, approved.

In Mitchell v. Hughes, 3 Colo. App. 43, an action was commenced in the district court to revoke the probate of a will had in the county court on the ground that the testator—the wife of the plaintiff,—was under disability in this state to dispose of more than half of her property by will. The learned court of appeals held that the action could not be maintained in the district court, and, in dismissing it, used the following language:

"It must be reversed, with directions to the court below to dismiss the complaint. This necessity springs from the absence of jurisdiction in the district court under the case as laid to enter any decree

whatsoever in the premises. It is a general rule, well established in this county, that a court of equity will not entertain jurisdiction of a suit to set aside a will, and proceedings for its probate, unless some special circumstances be averred by reason of which the general equitable jurisdiction of courts will attach. According to our constitution and statutes which have been enacted to carry out its provisions, county courts are courts of probate, fully clothed with original jurisdiction to hear and determine all this class of controversies, and to proceed to such final de-·terminations as shall settle the rights and interests of all parties concerned. It is not necessary to go to the extent of holding that the jurisdiction conferred by the constitution is exclusive. *   *   *  ."

To clearly demonstrate that the court of appeals by the above decision intended to announce a differ-ent rule in this state from that existing in other states, (and to be in harmony with the supreme court, in Clemes v. Fox, supra, when it declared the juris-diction of the county courts of this state must be judged by our constitution and statutes even if different from England and all other states in the union,) it may be well to refer to a few cases in other jurisdictions involving the same question there considered.

In Finch v. Finch, 14 Ga. 363, the court declares, that an objection to the probate of a will at the time it is offered for proof, because of the coverture of the testatrix, could not be raised as not being com-prehended within the ordinary issue *devisavit vel non* which involved questions of fact only, declaring that at the time of probate the court would not look into such questions, as that right belonged to another

court in another jurisdiction. The court continues:

"If the ecclesiastic courts in England refused to adjudge any other question than probate, or non-probate, we leave the parties to discuss all other questions in the appropriate forums established for this purpose."

In Cameron v. Watson, 40 Miss. 191, the same identical objection as that raised in Mitchell v. Hughes, supra, was there presented to the probate and the supreme court of Mississippi held that it could not be heard by the surrogate at the probate but was one for subsequent adjudication in the proper forum, and beyond the jurisdiction of the probate court, declaring that it was a question of the construction and legal effect of the will, and not embraced in such an issue.

In Prator v. Whittle, 16 S. C. 40, a similar question was sought to be raised at the probate, and the court held it could not be so raised in the following language:

"All questions as to the construction of the will must be settled by subsequent proceedings in the equity jurisdiction. So little has the probate court to do with the contents of a will, that it is laid down as an elementary principle, that the bare nomination of an executor, without giving any legacy or appointing anything to be done by him, is sufficient to make it a will, and, as a will, it is to be probated."

This case is cited with approval in the similar case of Mears v. Mears, 15 O. St. 90.

In Doan v. Lake, 32 Me. 268, the testator failed to make provision for one of his children, which was obligatory under the statute, unless it appeared the omission was intentional. Objection for this reason

was made to the probate of the will at the time it was presented. The court held, "that its import in this respect must be modified in law so far as may be requisite for securing to appellant whatever rights he may be able to prove," and that the question being one of law could not be heard at the probate.

As against this case is Brown v. Scherrer, supra, in our own state, under our own particular jurisdiction and statutes, wherein a similar question, namely, objections raised at time of probate of a will because it was executed before marriage with the contestant were heard at the probate, and the will refused probate, though this objection belonged entirely to the second class, and in no sense was involved in the issue *devisavit vel non* which belongs exclusively to the first class.

In Ramsey v. Welby, 63 Md. 584, an attempt was made in the probate court to have determined the respective legal rights of parties under a will. The court says:

"It is well settled that the orphans' courts are clothed with no such jurisdiction. Questions of this nature can only be determined in courts of law or equity."

We are therefore clearly of the opinion, that there may be heard on this application to probate the will of Peter Magnes both classes of objections raised by the contestants, namely:

First. The testamentary capacity of the testator; and

Second. The validity of the contents of the will, if it be the will of decedent.

The objections must be heard in the order indicated. If it appear that the instrument is not his will,

it will not be necessary to consider the second class of objections. But as the attesting witnesses have complied with the statute, and no evidence has been offered to impeach the testamentary capacity of the decedent, we must determine it is his will and admit it to probate, unless on consideration of the second class of objections, as to the validity of its contents, we find the same or any thereof well taken. If the contents are only void in part; that part good will be admitted to probate and that part bad will be denied probate. If all are void, the entire instrument will be denied probate.

The second. class of objections involved in this case relate principally to the validity or invalidity of the ante-nuptial contract, and its effect upon the validity of the contents of the will in question. To determine this issue, we are asked to pass upon the objection made by counsel for proponents to the testimony of the widow concerning the validity of the ante-nuptial contract. The sections of the statutes involved are as follows;

Mills Ann. Stat. § 4816. "That no party to any civil action, suit or proceeding, or person directly interested in the event thereof, snall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section when any adverse party sues or defends as the trustee or conservator of an idiot, lunatic or distracted person, or as the executor or administrator, heir, legatee or devisee of any deceased person. * * * , unless when called as a witness by such adverse party suing or defending."

Several exceptions are mentioned in the statute, the only one here concerned being the second, as follows:

2. "Whenever any such action, suit or proceeding, any agent of any deceased person shall in behalf of any person or persons suing or being sued in either of the capacities above named, testify to any conversation or transaction between the agent and the opposite party, or the party in interest, such party or parties in interest may testify concerning the same conversation or transaction."

Mills Ann. Stat. § 4824. "A husband shall not be examined for or against his wife without her consent; nor a wife for or against her husband without his consent, nor shall either during the marriage or afterward be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other."

The statutes were originally copied from Illinois, and so far as the purposes of this case are concerned are still substantially the same; though immaterial changes as affecting this case have been made.

In Mueller v. Rebham, 94 Ill., 142, the supreme court of that state, in construing the meaning of the statute, uses the following language:

"The statute in this regard was intended to protect the estates of deceased persons from the assaults of strangers, and relates only to the proceedings wherein the decisions sought would tend to reduce or impair the estate, and does not relate to the relative rights of heirs or devisees as to the distribution of an estate in proceedings in which the estate itself is in no event to be reduced or impaired."

There is no question in our mind that this construction of the purpose of the statute is abundantly

maintained by the authorities, and is the construction that must be given it by our courts. Pigg v. Carroll, 89 Ill. 207; Freeman v. Freeman, 62 Ill. 190; Whitmer v. Rucker, 71 Ill. 410; Ferbrache v. Ferbrache, 110 Ill. 210; Powell v. Powell, 114 Ill. 329; Kelsey v. Snyder, 118 Ill. 544; Comer v. Comer, 119 Ill. 170; Steele v. Clark, 77 Ill. 472; Stone v. Cook, 79 Ill., 426; Ruchman v. Allwood, 71, Ill. 155; Penn v. Ogelby, 89 Ill. 110; Stewart v. Kirk. 69 Ill. 509; Douglass v. Fullerton, 7 Ill. App. 102; 132 Ill. 442; Dean v. Long, 122 Ill. 447.

Our supreme court has given the statute the same construction. Whitsett v. Kershow, 4 Colo. 426; Gilham v. French, 6 Colo. 196; Fetta v. Vandevier, 3 Colo. App. 419; Fetta v. Vandevier, 20 Colo. 369; Williams v. Carr, 4 Colo. App. 367; Levy v. Wight, 12 Colo. 10; Palmer v. Hanna, 6 Colo. 60 (Citing with approval Pigg v. Carroll, 89 Ill. 307.)

The case of Brace v. Black, 125 Ill. 33, seems to have ignored the rule first announced by that court, without reference to any of the early authorities. The following language used by the court, however, would seem to distinguish it from the cases first referred to:

"The object of this suit is not merely to adjust rights between heirs at law, as in Pigg v. Carroll, 89 Ill. 307; it is to take the estate from the legatees, some of whom are not heirs at law, and vest it in the heirs at law."

In the subsequent case of Pyle v. Pyle, 41 N. E. 999, (Ill.) the court used this language:

"Mueller v. Rebham was a contest over a will, yet, at the same time it was simply a litigation among the children and heirs of a common ancestor, and the

purpose and result of the suit merely was to determine the relative portions of the estate that each child or heir was entitled to. The principle upon which these decisions were based is, that the statute in question was intended in this regard to protect the estates of deceased persons from the assaults of strangers and relates only to proceedings wherein the decisions sought would tend to reduce or impair the estate, or deprive the heirs of it, and has no reference to the relative rights of the heirs at law, as among themselves."

We find no case in our supreme court or court of appeals, which, when properly understood, may be said to hold differently from the rule announced in Illinois, where the contest over the will is between the heirs. In this case it cannot in any sense be said to be an action which will reduce or impair the estate. The estate is exactly the same, no matter what the result of this action may be. It is not necessary to follow the several cases determined by the supreme court and the court of appeals of this state, in which it is claimed a different construction has been given this statute. They did not involve a will contest, where the parties were only the heirs, and while in this case the grandchildren of the decedent may not be properly regarded as heirs within the meaning of the decision referred to, it will not be necessary to consider the effect of the ruling in this respect in Brace v. Black, supra, upon this case because the conclusions of fact reached by the court have been found without reference to any part of the testimony of Maria Magnes objected to by the guardian *ad litem* and counsel for proponents. Again, it may be seriously

doubted whether this proceeding to probate a will, can be said to be "an action or proceeding by or against an executor, administrator, heir, etc. In re Spiegelhalter's Will, 39 Atl. 465; Tanner v. Hall, 17 S. 187; Kump v. Coons, 63 Atl. 448.

With reference to that part of the statute limiting the rights of husband and wife to testify, except in the cases specified, it has been held by the supreme court of the United States, that while such communications might be privileged if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion when the contest is between the heirs or next of kin. Glover v. Patton (165 U. S.), 17 Sup. Ct. 411; Layman's Will, 42 N. W. 286; Scott v. Harris, 113 Ill. 447; Grayham v. O'Fallon, 4 Mo. 338; Goddard v. Gardner, 28 Conn. 172; Beaubien v. Cicotte, 12 Mich. 488; Russell v. Jackson, 9 Hare 387; Groll v. Tower, 85 Mo. 249; Hunt v. Blackburn, 128 U. S. 464.

An ante-nuptial agreement will be sustained when fairly made, yet it seems to be uniformly held, that from the confidential relations between the parties, it will be regarded with rigid scrutiny, and where the circumstances establish that the woman has been deceived, or in the absence of a full and complete knowledge and understanding of her rights, entered into such a contract, it will be held null and void. It also appears from the authorities, that the burden of proof is cast upon the husband, or his representatives, to show perfect good faith, and strict proof will be required, particularly where the provision made for the wife is inequitable or unreasonably disproportioned to the means of the husband. The par-

ties to such an agreement stand in a confidential relation. It was necessary, in my opinion, that the marital rights of the widow should have been disclosed to her. The failure to do so would constitute an undue advantage, for which such contracts have been repeatedly annulled. I am satisfied that the burden was upon the proponents to prove by satisfactory evidence that appellee had knowledge of the character and extent of her husband's property, and of the provisions and effect of the instrument. In support of these propositions, the following authorities may be cited: Taylor v. Taylor, 144 Ill. 145; Nathan v. Nathan, 166 Mass. 295; Lamb v. Lamb, 130 Ind. 273; Sampson v. Sampson's Excrs., 94 Ky. 586; Pierce v. Pierce, 71 N. Y. 154; Gibson v. Gibson, 15 Mass. 105; Kline v. Kline, 57 Pa. St. 120; Kline's Estate, 64 Pa. 122; Achilles v. Achilles, 151 Ill. 136.

We find from the evidence that at the time of the execution of this contract, the contestant, Marion Magnes, understood very little, if any, English. She was by nationality a Scandinavian, ignorant, unsophisticated, and having no knowledge whatever of her rights as a wife. There was no evidence whatever that her rights in this respect were ever explained to her, and the conclusion seems irresistible from all the evidence, that she could not have known the nature of the instrument she signed, nor is there any evidence that it ever was subsequently, or at any time explained to her.

I therefore conclude, that this ante-nuptial agreement was, and is, absolutely void. The testator made and executed the will in question with the belief that this agreement was a valid instrument. He expressly declared that it should be a part of his will, and that

nothing in its provisions should conflict with or impair its terms.   If this be true, it cannot be said by this court, that the decedent would have made the same will had he known that the ante-nuptial agreement would be declared invalid.   The court does not know what would have been the character of the will of the deceased, had he known the effect of the agreement in question.   To attempt to carry out the terms of the will would necessitate an entire change in the plan, scheme and purpose of the testator.   It follows, that for this reason alone, the court is bound to hold that the will is void.  It will not be necessary, therefore, to pass upon any of the numerous other objections raised by the contestants.

For the reason herein stated, the objections of the contestants, denominated herein as those of the second class, will be sustained, and the petition of the proponents for the probate of the will will be denied.